Argued January 27, affirmed March 9, 1972

WEST COAST BEET SEED CO., *Plaintiff, v.*
POLK COUNTY FARMERS COOPERATIVE,
*Respondent,* KENNEDY ET UX, *Appellants.*

494 P2d 880

382

*Asa L. Lewelling,* Salem, argued the cause and filed a brief for appellants.

*Jerome L. Noble,* Dallas, argued the cause for respondent. With him on the brief were Hayter, Shetterly, Noble & Weiser, Dallas.

TONGUE, J.

This is an interpleader proceeding involving the balance of the proceeds of a crop of sugar beets, in the sum of $7,042.07. The actual controversy is between the owners of the land on which the crop was grown by a tenant who failed to pay rent due under his lease and a farmers cooperative which financed the unsuccessful farming operations of the tenant.

Defendants Kennedy, the owners, filed a cross-complaint contending that defendant Polk County Farmers Cooperative was liable to them for $13,000 in unpaid rent on the theory that it "so possessed and used Kennedy's farm for its own purposes, that the Co-op became liable to Kennedy for the rent." The trial court held that the Co-op was not liable for the balance of the rent and directed payment to it of the funds on deposit in the registry of the court. The Kennedys appeal.

In view of the contention by the Kennedys that the Co-op took possession of the farm to protect its security for payment of moneys advanced by it to the tenant, the facts are of primary importance.

In February 1968 the Kennedys entered into a

written lease of a farm near Salem to two brothers named Hayes. The lease, by its terms, extended until October 1972 and required specified rental payments on October 15, 1968, July 1, 1969, and October 15, 1969, among other payments. The lease prohibited any assignment or sublease without written consent of the owners. It did not, however, include any express provision for a landlords' lien against crops grown by the tenants.

In July and September 1968 the Hayes brothers subleased 115 acres of the farm to one Brandt for the crop year 1968-69 on a share-crop basis. In turn, Brandt entered into a share-crop contract with plaintiff to raise sugar beet seed on that tract. The Hayes brothers testified that they asked Mr. Kennedy if it was "okay" to sublease that tract to Brandt and that he said "it would be fine." They also testified that in December 1968 Kennedy admitted that he had previously agreed to the sublease.[1] Mr. Kennedy denied both conversations with the Hayes brothers and testified that he did not learn of the sublease until the fall of 1969.[2]

During 1968 the Hayes brothers borrowed over $40,000 from some 15 "different people" to finance their farming operations for other crops, including $5,000 in December to pay the rental payment due in October. At the end of 1968 they also owed $29,326.44 to the Co-op.

[1] Brandt also testified that in 1968 he hired the Co-op to plant the sugar beet crop and also borrowed a tractor from Kennedy to cultivate the sugar beets.

[2] Kennedy admitted, however, that he loaned the tractor in 1968 to Brandt to cultivate the sugar beets on that farm, although contending that he thought Brandt borrowed it on behalf of the Co-op, for whom Brandt had formerly worked.

Brandt and his family did all the cultivating and weeding on the 115 acres subleased by him for the sugar beet crop. As of July 1, 1969, when the next rental payment was due by the Hayes brothers to the Kennedys, the sugar beet crop had not been harvested. The Kennedys apparently do not contend that the Co-op "took possession" of that 115 acre tract.

During 1969, however, the Co-op provided various "custom field services" to the Hayes brothers relating to crops of strawberries and pole beans on 135 acres of the remaining tillable acreage on that farm. These services included the planting of the beans and the fertilizing and spraying with chemicals of both crops with equipment provided and paid for by the Co-op. It also paid for the labor and electricity for irrigation of the crops. In addition, the Co-op paid for picking the strawberry crop and received payment of the "picking advance" from the cannery for that crop. It also paid for the rental of busses to transport pickers for the strawberry crop and, later, for the bean crop. It also sent out a car at the end of each week during the bean picking season between the middle of July and early September 1969 to pay off the pickers.

According to the testimony, all of these "custom field services" were done by the Co-op at the request and direction of the Hayes brothers and were charged to the Hayes account, in the same manner as done by the Co-op for many other farmers in the regular course of the business of the Co-op to provide such services.

It also appears from the testimony that the Co-op did not undertake or assume the cultivation of the crops; that in 1969 the Hayes brothers were operating four tractors on the farm (with fuel paid by the Co-op) and that they did all of the plowing, cultivation and "staking" without any payments from the Co-op.

In May 1969 the Co-op talked to the Hayes brothers about financing all 1969 crops, as it also did for other farmers on a yearly basis. On May 27, 1968, the Co-op had previously taken a UCC "loan and security agreement" covering all crops. On June 30, 1969, the Co-op took assignments from the Hayes brothers of the subleases to Brandt, including the interest of the Hayes brothers in the Brandt sugar beet seed crops, and those assignments were acknowledged and accepted by plaintiff. On July 3, 1969, the Co-op also filed a UCC "financing statement" covering the same crops.

When the rental payment of $8,000 was due on July 1, 1969, the Hayes brothers told the Co-op they had to pay the rent to continue operating. At that time the beet seed crop was not harvested and the bean harvest was also about to begin. The Co-op then delivered to the Hayes brothers a check in that amount made payable to "Hayes Bros. & David Kennedy" and it was delivered by the Hayes brothers to Mr. Kennedy. After the strawberry and bean crops were harvested, the Co-op was paid all of the proceeds from such crops. "The only thing left" is the "net proceeds" from the beet crop, as paid into court by plaintiff.

Meanwhile, Kennedy in April 1969 demanded payment of a $1,516.72 balance due⑨ from the Hayes brothers and informed them that he would take possession of the farm if $5,000 was not paid as the rental payment due on June 15, 1969. In fact, the sum payment of $8,000 was due on July 1, 1969, and was paid on that date, as previously stated. The Kennedys took no further action until after the failure of the Hayes

---

⑨ This amount represented an increase in property taxes and the cost of fire insurance which the Hayes brothers had agreed to pay, among other things.

brothers to make the rental payment of $13,000 due on October 15, 1969. Kennedy then obtained a judgment against the Hayes brothers for that amount and now seeks to enforce payment of that amount from the Co-op on the theory that it took possession of the farm and thereby became responsible for payment of that rental payment under the theory of an implied assignment of the lease.

The first question to be decided is the relative priority of the claim of the Kennedys and that of the Co-op to the proceeds of the beet seed crop.

■ We hold that the claim of the Co-op was entitled to priority over the claim of the Kennedys because before the Kennedys took judgment against the Hayes brothers the Co-op had perfected its security interest in that crop in accordance with the provisions of the Uniform Commercial Code of Oregon by the UCC "security agreement," and by the filing of the UCC "financing statement" covering the proceeds of that crop, in accordance with the provisions of ORS 79.2020, 79.3020, 79.3030 and 79.3060. In addition, the Co-op had an assignment of the crop subleasing agreement, which had been accepted by plaintiff. The Kennedys' lease did not provide for a lien against the crop and they acquired such a lien only as a result of the subsequent judgment taken by them against the tenant.

Accordingly, the trial court was correct in directing that the proceeds of the crop, as deposited in the registry of the court, be paid to the Co-op.

This does not, however, necessarily dispose of the further question whether, independently of the relative priority of the claims of the Kennedys and the Co-op to the proceeds of the crop, the Co-op was nevertheless liable to the Kennedys for the payment of $13,000 in rent due on October 15, 1969, as demanded

by the Kennedys in their cross-complaint against the Co-op, on the theory that the Co-op took possession of the farm and, as a result, became liable for payment of rent.[4]

The only authorities relied upon by the Kennedys in support of that theory are the decisions of this court in *Abbott v. Bob's U-Drive et al,* 222 Or 147, 352 P2d 598 (1960), and in *Leadbetter v. Pewtherer,* 61 Or 168, 121 P 799 (1912), and an Annotation in 73 ALR2d 1118 (1960), at 1129.

In *Abbott* an individual named Thompson leased certain premises for use as an automobile leasing business. He then formed two corporations, one for short term automobile leasing and one for long term leasing. Thompson was the president and manager of both corporations and owned 50 percent of the stock of each. He then assigned the lease to one of these corporations, although both of them occupied the premises as tenants of Thompson for the purposes of their respective businesses.

Under these facts we held that both corporations were responsible for payment of rent to the owner of the property. In so holding, we said (at p 156):

"* * * When a person other than the lessee is in possession of leased premises paying rent to the lessor, there is a presumption that the lease has been assigned to the person in possession. (Citing cases)

"In a majority of the modern cases applying this rule the implied assignment arising out of possession is regarded as effective to form the basis

---

[4] Under the record in this case we do not undertake to decide the question whether such a cross-complaint is proper in an interpleader proceeding.

for the running of covenants in the lease so as to burden or benefit the assignee. * * *"

In *Leadbetter* the holder of a chattel mortgage on the furniture owned by the tenant of a hotel took possession of the leased premises "* * * by authority of the lessee and the consent of the lessor and paid the stipulated rent for a portion of the time he occupied. * * *" Under these facts we also held (at p 171) there was an oral assignment under which defendant became liable for payment of rent because under these facts "* * * the law will presume that the lease has been assigned to him * * *," although also recognizing that "* * * this presumption may be overthrown by showing that a different relation exists between himself and the lessee * * *." To the same effect, see 1 Tiffany, Landlord and Tenant 951, § 153 (1910).

In 73 ALR2d, *supra,* at 1129, the remaining authority cited by defendants Kennedy, the following rule is stated:

"Where the mortgagee of a leasehold, or other holder of such an interest under a security arrangement, is regarded as having been generally in possession of the premises during the operative times, cases following the New York doctrine described in § 4, supra, hold that the mortgagee is to be regarded as in privity with the lessor and hence liable on the lessee's covenants that are of a nature to run with the leasehold. * * *"

■ In this case, although the Co-op sent its employees upon the farm at various times to perform various "custom services" on behalf of the tenant, there is no evidence that the Co-op ever took possession of the premises for any substantial continuing period of time. It also appears that the Hayes brothers were in exclusive possession during all of the intervening periods

of time and that they performed the work of plowing, cultivating and "staking" the bean crop. Furthermore, most of the services performed by the Co-op were in connection with the 135 acres of the farm on which the strawberry and pole bean crops were being raised by the Hayes brothers, rather than the 115 acres sublet to Brandt to grow the beet seed crop which produced the funds here in dispute.

Under these facts we are not prepared to hold that the trial court was in error in holding, in effect, that the Kennedys failed to sustain their burden of proof in this case, including the burden to prove that the Co-op took possession of the farm within the meaning of the rule as stated in *Abbott* and *Leadbetter*.

It might be contended that even if it be considered that the Co-op took possession of the farm with consent of the owner and paid the rental payment due on July 1, 1969, any resulting presumption of an oral assignment of the lease by the Hayes brothers to the Co-op would nevertheless be overcome in this case by the fact that these services were performed by the Co-op in the regular course of its business and by the fact that it had previously taken a UCC "security agreement" and later filed a UCC "financing statement" covering the sugar beet seed crop.[9] Under the facts of this case, however, it is not necessary to decide that question.

The decision of the trial court is affirmed.

---

[9] The security agreement covered, among other things, "debtor's leasehold agreement, if any, in" the lands under lease. It is conceded, however, that "the outcome of this case does not hinge on" this provision so as to constitute such an assignment of the lease as to render the Co-op liable for payment of rent. See also ORS 79.3170.