132 N.J. Super. 517 (1975)
334 A.2d 357
SHAW MUDGE & COMPANY, A CORPORATION, PLAINTIFF-RESPONDENT,
v.
SHER-MART MANUFACTURING CO., INC., A CORPORATION, DEFENDANT-RESPONDENT, UNITED STATES OF AMERICA, CLAIMANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Submitted February 10, 1975.
Decided February 27, 1975.
*518 Before Judges LEONARD, SEIDMAN and BISCHOFF.
Mr. Jonathan L. Goldstein, United States Attorney, attorney for appellant (Mr. Ronald L. Reisner, Assistant United States Attorney, of counsel).
Messrs. Jamieson, Walsh, McCardell, Moore and Peskin, attorneys for respondent Shaw Mudge & Company (Mr. Burton Peskin, of counsel).
*519 No brief was filed in behalf of respondent Sher-Mart Manufacturing Co., Inc.
The opinion of the court was delivered by SEIDMAN, J.A.D.
The issue involved in this appeal is whether a fully perfected security interest in an account receivable is superior to the lien of a subsequent judgment creditor who levied upon that account prior to default on the part of the debtor in the secured transaction.
The facts are not in dispute. On September 20, 1972, defendant Sher-Mart Manufacturing Co., Inc. (Sher-Mart) entered into a security agreement with The Princeton Bank and Trust Company to secure payment of a $50,000 loan evidenced by a promissory note. The agreement granted to the bank a first security interest in certain collateral described therein, including "accounts receivable of Borrower now owned, held and/or hereafter to be created satisfactory to the Bank." Simultaneously, a financing statement was filed in the office of the Secretary of State.
On May 4, 1973 plaintiff herein sued Sher-Mart in the Mercer County District Court to recover the sum of $1900 on a book account, together with interest and costs. Judgment was thereafter entered in its favor for $2100.76. Pursuant to a writ of execution, plaintiff caused a levy to be made on June 14, 1973 on a Sher-Mart account receivable due and owing from E.J. Korvette, Inc. Plaintiff then moved for an order directing Korvette to pay to the constable the amount of the judgment plus subsequent costs. Sher-Mart objected to the entry of the order and the matter was set down for hearing on August 30, 1973.
On August 14, 1973 the bank assigned all its right, title and interest in the security agreement to the Small Business Administration, an agency of the United States of America. A financing statement covering the assignment was duly filed. Sher-Mart owed at that time the sum of $48,109.35 plus interest accruing at the per diem rate of $10.88. By reason of Sher-Mart's having failed to pay the *520 July installment on its note, the Small Business Administration notified Sher-Mart on August 21 that it was in default and demanded payment in full.
The claimant herein next filed a motion in the county district court for an order vacating the levy and directing Korvette to pay the amount of the account receivable to the Small Business Administration. It was, on further motion, admitted as a party so as to assert its claim to the levied property. In a letter opinion the trial judge upheld plaintiff's levy on the ground that the right of the parties were fixed as of the date of the levy and Sher-Mart's subsequent default and the consequent right of the Small Business Administration to collect Sher-Mart's accounts receivable did not relate back to a date prior to the default.
Claimant appeals and we reverse.
Under the Uniform Commercial Code-Secured Transactions, N.J.S.A. 12A:9-302(2), claimant's assignment entitled it to whatever rights the bank had at the time. It is not in dispute that the bank had an enforceable security interest in the collateral described in the agreement (N.J.S.A. 12A:9-204 (1)). The collateral included accounts (N.J.S.A. 12A:9-105), defined in N.J.S.A. 12A:9-106 as "any right to payment for goods sold or leased or for services rendered which is not evidenced by an instrument or chattel paper." The security interest attached not only to present accounts receivable but also to those to be acquired in the future (see N.J.S.A. 12A:9-204(3)). It is uncontroverted that the bank had taken all necessary steps for perfecting its security interest (N.J.S.A. 12A:9-303(1)), including the filing of a financing statement (N.J.S.A. 12A:9-302(1)) with the Secretary of State (N.J.S.A. 12A:9-401(1) (c)).
There is no doubt that the bank had a perfected security interest in the Korvette account prior to the levy thereon by the judgment creditor. A security interest attaches to collateral as soon as there is an agreement that it attach (the security agreement here), value is given (the *521 bank's $50,000 loan to Sher-Mart), and the debtor has rights in the collateral (defendant's right to collect the money Korvette owed it) (N.J.S.A. 12A:9-204(1)). Cf. M. Rutkin Elect. Sup. Co., Inc. v. Burdette Elect., Inc. 98 N.J. Super. 378; 384 (Ch. Div. 1967). It is self-evident that the Korvette account must have been in existence before the levy. Consequently, when the levy was made the security interest had already attached to the account.
N.J.S.A. 12A:9-301(1) (b) provides that an unperfected security interest is subordinate to the rights of a person who becomes a lien creditor (in this case a creditor who has acquired a lien on the property involved by levy, N.J.S.A. 12A:9-301(3)), without knowledge of the security interest and before it is perfected. It has been pointed out that Code statements generally are in the negative. Thus, there is no affirmative rule as to perfected security interests, leaving "the reader to imply that the rule is the opposite of the rule stated as to unperfected interests." 1 Coogan, Hogan and Vagts, Secured Transactions under the Uniform Commercial Code, § 4.09[3] at 306. The inferences to be drawn from subsection (1) (b) "are that an unperfected security interest is good against a lien creditor with knowledge, and a perfected security interest is good whether or not the subsequent lien creditor has knowledge." Id.
Although there appears to be no reported case in this State squarely in point, it has uniformly been held elsewhere, in the absence of a statutory or common law exception, that a secured creditor who has duly filed a financing statement is entitled to priority over a subsequent lien creditor seeking to levy on or otherwise claim the same collateral. Texas Oil & Gas Corp. v. United States, 466 F.2d 1040 (5 Cir.1972); Grain Merchants of Ind. v. Union Bank & S. Co., Bellevue, Ohio, 408 F.2d 209 (7 Cir.1969); Rosenberg v. Rudnick, 262 F. Supp. 635 (D. Mass. 1967); Troy Lumber Co. v. Williams, 124 Ga. App. 636, 185 S.E.2d 580 (App. Ct. 1971); Walker Bank & Trust Co. v. Smith, 88 Nev. 502, 501 P.2d 639 (Sup. Ct. 1972); In re Pasco Sales Co., Inc., *522 77 Misc.2d 724, 354 N.Y.S.2d 402 (Sup. Ct. 1974); General Motors Acceptance Corp. v. Stotsky, 60 Misc.2d 451, 303 N.Y.S.2d 463 (Sup. Ct. 1969); William Iselin & Co. v. Burgess & Leigh Ltd., 52 Misc.2d 821, 276 N.Y.S.2d 659 (Sup. Ct. 1967); Ferguson v. Morgan, 282 N.C. 83, 191 S.E.2d 817 (Sup. Ct. 1972); West Coast Beet Seed Co. v. Polk County Farm Co-op., 261 Or. 381, 494 P.2d 880 (Sup. Ct. 1972); Industrial Packaging Prod. Co. v. Fort Pitt Pack. Int., 399 Pa. 643, 161 A.2d 19 (Sup. Ct. 1960); Gulf Oil Co. v. First National Bank of Hereford, 503 S.W.2d 300 (Tex. Civ. App. 1973). This rule applies as well to after-acquired collateral covered by the agreement, provided, of course, attachment has occurred as indicated hereinabove. Grain Merchants of Ind. v. Union Bank & S. Co., Bellevue, Ohio, supra. It should be observed that the judgment lien here is not one which either by statute or common law is entitled to priority over a perfected security interest. Cf. Ferrante v. Foley, 49 N.J. 432 (1967).
The fact that at the time of the levy there may not yet have been a default on the bank loan to which the security agreement related is not determinative here. The rights of the parties were fixed, not when the levy was made, as the trial judge held, but rather when the security interest attached. Thus, while a debtor's rights in collateral may be voluntarily or involuntarily transferred, including by way of levy (N.J.S.A. 12A:9-311), such transfer would still be subject to a perfected security interest. See Royal Store Fixture Co. v. N.J. Butter Co., 114 N.J. Super. 263, 268 (App. Div. 1971). Cf. The First Nat'l. Bank of Bay Shore v. Stamper, 93 N.J. Super. 150, 159 (Law Div. 1966). The Code merely sanctions sale or other creditor remedies against the debtor's equity in the chattel. See Farrow v. Ocean County Trust Co., 121 N.J.L. 344 (Sup. Ct. 1938).
Nor is it of any consequence, as plaintiff now argues, that the secured creditor would have been unable to reach the Korvette account had it been paid to Sher-Mart prior to default. The security agreement in this case created no security *523 interest in the proceeds of the accounts receivable but only in the accounts themselves.
Sher-Mart was in default under the security agreement when it failed to pay the note installment due July 21, 1973. The secured party on default had the right to take possession of the collateral, including, of course, the outstanding account receivable here involved. N.J.S.A. 12A:9-503. It was empowered to enforce its security interest by any available judicial procedure. N.J.S.A. 12A:9-501 (1).
We hold therefore that since the bank's security interest in the account receivable here in question, acquired by claimant by assignment, was superior to plaintiff's judgment lien thereon, and since Sher-Mart's default entitled claimant to immediate possession of the proceeds of the account, the trial judge should have directed payment thereof to claimant and not to plaintiff.
Reversed and remanded for the entry of an order consistent with the foregoing.