**Retha G. FRIERSON, Plaintiff,**

v.

**UNITED FARM AGENCY, INC., Defendant,**

**and**

**Merchants Bank, Garnishee/Intervenor.**

No. 86–0974–CV–W–3.

United States District Court, W.D. Missouri, W.D.

Nov. 6, 1987.

Michael W. Manners, Paden, Welch, Martin, Albano & Graeff, P.C., Independence, Mo., for plaintiff.

David A. Welte, Polsinelli, White, Vardeman & Shalton, Kansas City, Mo., for defendant.

## ORDER

ELMO B. HUNTER, Senior District Judge.

Before the Court are defendant's motions to quash plaintiff's garnishment of funds held in the defendant's bank accounts at Merchants Bank ("Merchants"), Country Club Bank ("Country Club") and Centerre Bank of Kansas City ("Centerre").[1] Merchants Bank has intervened in this action pursuant to Rule 90.15 of the Missouri Rules of Civil Procedure. Plaintiff has filed motions to pay the money from the accounts into the court. A hearing was held before the Court on July 9, 1987, at which time all parties were given an opportunity to present testimony and argument in support of their respective positions.

### I

Plaintiff Retha G. Frierson obtained a $513,525 judgment against defendant United Farm Agency, Inc., ("UFA") in the United States District Court for the Eastern District of California on June 3, 1985. That judgment was affirmed by the Ninth Circuit Court of Appeals on June 4, 1987. In the interim, plaintiff filed this independent action to recognize the California judgment in Western District of Missouri. Summary judgment was granted in plaintiff's favor on January 9, 1987.

On May 5, 1987, plaintiff had notice and summons of garnishment served on Merchants, Country Club, and Centerre. Answers to interrogatories to the garnishees revealed that defendant had $74,219.07 in an account at Merchants, $965 in an account at Centerre and $1,000 in an account at Country Club. In its answers to the interrogatories, Merchants also stated that it had a valid security interest against all of the money defendant had on deposit with it and that it, therefore, did not owe defendant any money which could be garnished by plaintiff. Merchants also alleged contract and common law rights of set-off against the money in the account. Thereafter, defendant filed its motions to quash the garnishments. Merchants intervened when a question as to defendants standing to move to quash the garnishments arose.[2]

### II

Both defendant UFA and garnishee/intervenor Merchants Bank argue that the Court should quash plaintiff's garnishment because the money in plaintiff's bank account is subject to Merchants security interest which they argue is prior to any interest plaintiff received by means of the garnishment.

The security interest was originally granted to Metro North State Bank ("Metro North") by UFA in order to secure a loan of approximately $8.6 million.[3] Fi-

---

1. The motions were filed pursuant to Rule 76.25 of the Missouri Rules of Civil Procedure. Rule 69(a) of the Federal Rules of Civil Procedure provides that proceedings to collect on a United States District Court judgment are governed by the proceedings of the state in which the district court is located.

2. The Court is convinced that intervenor Merchants has standing to move to quash the garnishment and, therefore, will not reach the question of defendant's standing.

3. Approximately $5,822,000 was owed on the note as of the date of the hearing.

nancing statements which describe the collateral covered by the security agreement were filed with the Missouri Secretary of State on August 9, 1985, and with the Records Department of Jackson County, Missouri, on August 7, 1985. The security agreement and financing statements provide that the following property of UFA's is subject to the security interest:

All of the following property of the debtor, whether now existing or hereinafter acquired, together with the proceeds thereof: accounts, contract rights, equipment, inventory, general intangibles and instruments, commissions receivable, mortgages receivable, deposit accounts of debtor with secured party, goodwill associated with debtor's business and all books and records relating to the foregoing collateral.

The security interest was later assigned by Metro North to Merchants and notice of the assignment was filed with State of Missouri and Jackson County.

A loan agreement signed concurrently with the note and security agreement provides several "events of default" which give Merchants the right to declare the loan in default and elect remedies provided by the Uniform Commercial Code ("U.C. C.") and the loan agreement. The agreement also sets out the remedies available to the bank if an event of default occurs. It allows the bank to, at its option, make the notes due and payable immediately upon default without "presentment, protest, or other notice of any kind." In addition, the "bank may resort to any and all security and to any remedy existing at law or in equity for the collection of notes and enforcement of covenants and provisions." The loan agreement further states that:

Notwithstanding the above, Bank may elect the remedies in this Article only in the event of a default by Borrower which has not been cured within fifteen (15)

days after Bank has deposited notice of said default in the United States mail addressed to Borrower and mailed by registered mail.

At the hearing, Mr. E.J. Burke, a Merchants Senior Vice President, testified that while the note matured after the garnishments were served and before the hearing [4] and which unpaid principal and interest was due at the time of the hearing, the bank had not declared the note to be in default or taken any steps to exercise any of its default rights.[5] (Hearing transcript at 11–12, 15–16). He testified that the bank had not accelerated the note because it felt that UFA was not in a position to pay the entire note and still remain in business.[6] Since UFA was not declared in default on the loan, and the bank chose not to accelerate the note or exercise any of its other default rights, no notice of default and right to cure was ever sent to UFA. (Hearing Transcript at 15–16) Burke was not sure if the bank would exercise its default rights if the garnishment was quashed, but he stated that there was no present intention on the part of the bank to accelerate the loan. (Hearing Transcript at 16.) He also stated that the bank's management was "looking at the loan", and that he knew of no problem, other than the garnishment, which might result in the Bank losing any other property pledged to secure the loan. (Hearing Transcript 16, 18) He did state that if the garnishment was quashed, the money in the Merchants account would be applied to the amount due on the loan. (Hearing Transcript at 20)

### III

### A

Merchants and UFA correctly note that Merchants' security interest was perfected before the plaintiff became a lien creditor

---

4. The note matured on June 30, 1987.

5. In its trial brief, Merchants stated that notice and summons of the garnishments also constituted default and breach under the loan agreement, entitling it to accelerate the entire note after sending the appropriate notice.

6. Merchants' brief echoed Mr. Burke's testimony that UFA could not pay off the entire debt if the loan was accelerated. The brief also stated that it was in the bank's best interest to have UFA remain as a going concern rather than to accelerate the note.

by serving notice of the garnishment on the banks and that under Mo.Rev.Stat. § 400.9–301(1)(b) a properly perfected security interest has priority over a party who becomes a line creditor after the security interest is perfected. They argue that the garnishment has impaired the value of Merchants' collateral, making Merchants feel "generally insecure" and that Merchants is therefore entitled to the money in the accounts under the remedy provisions of Article IX of the U.C.C. (Mo.Rev. Stat. §§ 400.9–501 to 400.9–507). Because Merchants is entitled to the money as a result of its security interest, it and the other two banks, as garnishees, are not in possession of any property of the debtor. Thus, they argue the garnishment should be quashed.

Plaintiff does not seem to dispute that Merchants had a perfected security interest in the funds contained in the three accounts at the time the garnishments were served.[7] Rather, plaintiff argues that Merchants has neither a present right to the funds, nor a right to have the garnishment quashed because it has not declared the loan in default or followed any of the procedures required by the loan agreement as a prerequisite to enforcing its U.C.C. and contract rights to the collateral.

■ The Court agrees with plaintiff. Article IX of the Uniform Commercial Code allows a creditor to obtain a security interest in property of the debtor to insure payment of a debt owed by the debtor to the creditor. If the debtor defaults on the debt, the creditor can utilize the remedies provided in Article IX. *See* Mo.Rev.Stat. §§ 400.9–501 to 400.9–507. Foremost among the remedies is, of course, the right to, upon default, seize the collateral, have it sold, and apply the proceeds of the sale to the debt. *See* Mo.Rev.Stat. § 400.9–504. The key, however, is default. Without a default on the debt underlying the security

interest, a secured creditor has no right to seize the collateral and apply it against the loan or otherwise prevent another creditor of the debtor from taking possession of the collateral. *See Sur–Gro Plant Food Co., Inc. v. State Savings Bank,* 730 S.W.2d 602, 604–05 (Mo.Ct.App.1987); *Humble Oil and Refining Co. v. Pathological and Diagnostic Laboratories, Inc.,* 11 U.C.C. Rep. Serv. 386, 387 (N.Y.Civ.Ct.1972); *see also* Mo.Rev.Stat. § 400.9–501(2) ("*after default,* the debtor has the rights and remedies provided in this part, those provided in the security agreement and those provided in § 400.9–207.") (emphasis added); Mo. Rev.Stat. 400.9–503 ("unless otherwise agreed a secured party has *on default* the right to take possession of the collateral.") (emphasis added).

*Sur–Gro Plant Food Co., Inc., supra,* involved a fight between two secured creditors, Sur–Grow and State Savings Bank, over crops grown by the debtor-farmer. Both parties had extended credit to the debtor, obtained a security interest in the crops, and filed a financing statement covering the crops. The trial court granted summary judgment in favor of State Savings Bank. Sur–Grow appealed arguing, *inter alia,* that State Savings Bank had failed to prove default by "unassailable proof" as required by the Missouri Supreme Court Rule governing summary judgment. (Mo.Sup.Ct.R. 74.04(h)) The Missouri Court of Appeals for the Western District agreed and remanded to the trial court to allow State Savings Bank an opportunity to prove default. In doing so, the Court stated:

> to be entitled to summary judgment for the proceeds of the crops as garnered by Sur–Grow's replevin, the bank had to show default by the Craigs on the underlying note of May 24, 1983, in the amount of $133,722.87. By its terms the security agreement was to secure the payments

---

7. The testimony and evidence presented at the hearing supports this. There was testimony that the funds were proceeds of accounts receivable. Proceeds of accounts receivable are listed as collateral in both the security interest and the finance statement. No testimony or evidence was presented which suggests any defect in the security agreement or the filing of the finance statements and the Court has found none. Thus, the Court is convinced that Merchants had a properly perfected security interest in the funds in the three bank accounts at the time the garnishments were served.

of the indebtedness of the note, *so the bank had no right to repossess the collateral without default.*

*Sur–Gro Plant Food Co., Inc.,* 730 S.W.2d at 604. (emphasis added).

The same conclusion was reached by the Court in *Humble Oil and Refining Co., supra,* a case surprisingly similar to the case at bar. In *Humble Oil,* secured creditors with a security interest over all or nearly all of the debtor's property filed a motion to prevent a judicial sale of debtor's property instituted by a judgment creditor. The debtor was in default, but the secured creditors, who were parents of the debtor's president, chose to allow the debtor to continue operating its business, rather than exercise their secured rights. The court, in denying the secured creditors' motion, stated:

> All that Article 9 filing guarantees to the secured creditors is certain rights and remedies against the debtor *upon default* (Article 9–501 et seq.) and priority in the distribution of the debtor's assets or the proceeds therefrom (Article 9–301 et seq.). It does not bar a subsequent or unsecured creditor from enforcing his rights anymore than a second mortgagee is precluded from foreclosing by the existence of a first mortgage.

*Humble Oil and Refining Co.,* 11 U.C.C. Rep.Serv. at 387 (emphasis added).

■ As a practical matter, this approach makes sense. Most secured loans provide for numerous events which constitute default, many of which are technical in nature and are inserted in the loan documents to enable the lender to declare the note in default when even a relatively minor problem arises with the loan or the debtor. Thus, at any given time many secured loans are technically in default, but are never treated as such by secured creditors. In addition, a secured party will occasionally, as Merchants has done in this case, ignore a default which is more than just a technical default. If a secured creditor with a security interest over all the debtor's property is permitted to rely on a default, whether technical or not, to prevent another creditor from executing on the debtor's property, while treating the loan as not in default when dealing with the debtor and others, severe inequities would result. Moreover, other creditors would be reluctant to extend credit to a debtor who has previously granted a security interest over all his property. Such an approach would be against both the spirit and the letter of the Uniform Commercial Code.

Section 400.9–311 explicitly provides that:

> [t]he debtor's right in the collateral may be voluntarily or involuntarily transferred (by way of sale, creation of a security interest, attachment, levee, garnishment or other judicial process) notwithstanding a provision in the security agreement prohibiting a transfer or making the transfer constitute a default.

Thus, a secured creditor cannot prevent a garnishment or judicial sale absent a declaration that the secured debt is in default and an exercise by the secured creditor of its rights over the collateral. *See Humble Oil and Refining Co.,* 11 U.C.C.Rep.Serv. 386; *Altec Lansing v. Friedman Sound, Inc.,* 204 So.2d 740, 741 (Fla.Cir.Ct.1967); *Brescher v. Associates Financial Services Co., Inc.,* 460 So.2d 464 (Fla.Cir.Ct.1984).

The loan agreement in this case provides that in addition to declaring the loan to be in default, Merchants must also give notice of default by registered mail, and a fifteen day grace period to cure the default before it can exercise any of its default remedies. As noted above, this was not done. In fact, Merchants has not, except for its intervention in this case, treated the note as being default in any respect. Mr. Burke testified that Merchants, like the secured creditors in *Humble Oil,* made a conscious decision not to declare the note in default and instead chose to allow UFA to continue in business. Merchants has no present right to the funds in the account arising from its security interest.

■ Merchants argues that sending notice of default and right to cure is irrelevant to the exercise of its rights in the collateral because the garnishment return date and the loan's maturity date would have occurred before the fifteen day grace

period would have expired. This excuse for failing to send the notice does not hold water because Merchants could have prevented the plaintiff from getting the money in the accounts by declaring the note to be in default and exercising its repossession remedy at any time prior to the hearing. *See e.g., Shaw Mudge & Co. v. Sher–Mart Manufacturing Co.,* 132 N.J.Super. 517, 334 A.2d 357 (1975) (the Court held that secured party was entitled to the accounts receivable which were levied upon after perfection of the security, but before default occurred). The timing of the return date, maturity date and fifteen day grace period simply does not excuse Merchants' failure to declare the note in default by sending the required notice.

### B

As mentioned above, Merchants has also asserted both a common law and a contractual right to set-off UFA funds on deposit with it.

■ "Established law in Missouri is that a bank may apply its customer's deposits to reduce the customer's loans from the bank 'as they become due.'" *Prince v. West End Installation Service, Inc.,* 575 S.W.2d 831, 832 (Mo.Ct.App.1978). This right of set-off, however, can only be used when the customer's loan is currently due and owing. Thus, "[a] bank cannot ... defeat a garnishment on the ground that the depositor owes the bank money on a note not yet due" on the date the bank garnishment was served. *Prince,* 575 S.W. 2d at 832; *Rigby Corp. v. Boatmen's Bank & Trust,* 713 S.W.2d 517, 529–30 (Mo.Ct. App.1986).

■ The summons of garnishment was served on Merchants Bank on May 20, 1987. The loan did not mature until June 30, 1987, and, as discussed above, Merchants did not declare the loan in default and accelerate the loan prior to that date. Thus, the debt between UFA and Merchants was never mature or otherwise due and owing at the time the garnishment summons was served on Merchants. Merchants, therefore, cannot rely on either its common law or contractual right of set-off

to quash plaintiff's garnishment of the UFA funds it holds.

It is therefore ORDERED that Defendant's Motion to Quash Garnishments and Defendant's Second Motion to Quash Garnishments are hereby DENIED.

It is FURTHER ORDERED that Plaintiff's motion for an order directing garnishee Merchants Bank to pay the sum of $74,219.01 to the Court is hereby GRANTED. Garnishee Merchants Bank is directed to tender said sum to the Clerk of the United States District Court for the Western District of Missouri within 5 days of the date of this order. The Clerk of the Court is ordered to forward said sum to plaintiff.

It is FURTHER ORDERED that Plaintiff's motion for an order directing garnishee County Club Bank to pay the sum of $1,000 to the Court is hereby GRANTED. Garnishee Country Club Bank is directed to tender said sum to the Clerk of the United States District Court for the Western District of Missouri within 5 days of the date of this order. The Clerk of the Court is ordered to forward said sum to plaintiff.

It is FURTHER ORDERED that plaintiff's motion for an order directing Centerre Bank of Kansas City to pay the sum of $965 to the Court is hereby GRANTED. Garnishee Centerre Bank of Kansas City is directed to tender said sum to the Clerk of the United States District Court for the Western District of Missouri within 5 days of the date of this order. The Clerk of the Court is ordered to forward said sum to plaintiff.

SO ORDERED.