**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1991-19

DIAJEWELS OF NY, INC.,
RAJWARAH JEWELLERS
PVT. LTD., and RENU
SHARMA,

      Plaintiffs-Respondents,

v.

THE GREAT JEWEL
FACTORY, INC., J.M.D. ALL
STAR IMPORT EXPORT, INC.,
J.M.D. ALL STAR IMPEX, INC.,
ANITA KHANNA, AJAY SARIN,
RANA PRATAP, LAVEENA
RASTOGI, TRILOKI BATRA,
CHIRAG BATRA, and NYCB
TRADING, LLC,

      Defendants-Respondents.

_____

GENOVA BURNS, LLC,

      Appellant.

_____

Submitted April 28, 2021 – Decided May 21, 2021

Before Judges Whipple, Rose, and Firko.

On appeal from the Superior Court of New Jersey, Law Division, Middlesex County, Docket Number L-5788-16.

Rajiv D. Parikh argued the cause for appellant (Genova Burns LLC, attorneys; Rajiv D. Parikh, of counsel and on the briefs; Maria R. Fruci and Christopher Zamlout, on the brief).

Jae H. Cho argued the cause for respondents Diajewels of NY, Inc., Rajwarah Jewellers PVT. LTD, and Renu Sharma (Cho Legal Group, LLC, attorneys; Kristen M. Logar, on the brief).

Elliot D. Ostrove argued the cause for respondents Ajay Sarin, Anita Khanna, The Great Jewel Factory, Inc., J.M.D. All Star Import Export, Inc., J.M.D. All Star Impex, Inc., and Rana Pratap (Epstein Ostrove, LLC, attorneys; Elliot D. Ostrove, on the brief).

Susheela Verma argued the cause for respondents Triloki Batra, Chirage Batra, and NYCB Trading, LLC.

James P. McGann argued the cause for non-party Aspen American Insurance Company (Chiesa Shahinian & Giantomasi, PC, attorneys; James P. McGann, on the brief).

PER CURIAM

Appellant Genova Burns LLC (The Firm) initially represented plaintiffs Diajewels of NY, Inc., Rajwarah Jewellers Pvt. Ltd., and Renu Sharma in litigation with defendants and counterclaimants, The Great Jewel Factory, Inc.,

J.M.D. All Star Import Export, Inc., J.M.D. All Star Impex, Inc., Anita Khanna, Ajay Sarin, Rana Pratap, Laveena Rastogi, Triloki Batra, Chirag Batra, and NYCB Trading, LLC (the Batra defendants and the Sarin defendants). After withdrawing, The Firm asserted an attorney's lien, instituted a collection action, and obtained a default judgment against plaintiffs for unpaid fees. The judgment was docketed as a statewide lien, and a writ of execution was issued. The Firm now appeals from a December 13, 2019, Law Division order denying its motion to enforce its judgment under N.J.S.A. 2A:13-5 and denial of its motion seeking turnover of funds supporting a supersedeas bond. We reverse and remand.

I.

This is the second time this matter has been before us on appeal. The relevant facts of the underlying dispute and procedural history were stated in our prior decision, <u>Diajewels of NY, Inc., v. Great Jewel Factory, Inc.</u>, No. A-3154-18 (App. Div. Mar. 12, 2021) (slip op. at 3-19), and we repeat only a summary here.

This matter arose from a dispute regarding the theft and conversion of jewelry. Diajewels is a New York corporation and a subsidiary of Rajwarah, which purchases jewelry manufactured and designed by Rajwarah, a private, limited liability company incorporated in India, for international distribution.

Renu Sharma is the president of Diajewels, director of Rajwarah, and a resident citizen of India.

In February 2013, Anita Khanna formed Great Jewel, a New Jersey corporation. On August 29, 2014, Sharma, Khanna, and her husband, Ajay Sarin, opened a retail jewelry store in Iselin that sold jewelry shipped by Rajwarah from India. The business venture terminated six weeks later.

On December 2, 2014, Diajewels filed a complaint and order to show cause against the Sarin defendants seeking return of inventory and proceeds from the jewelry sold. Initially, plaintiffs were represented by another law firm. On December 24, 2014, the trial court ordered plaintiffs to post a surety bond in the amount of $381,000 in exchange for certain jewelry in the Sarin defendants' possession. In accordance with the order, Aspen American Insurance Company (Aspen) issued a surety bond, secured by cash collateral, in favor of the Sarin defendants, on December 30, 2014.

On December 20, 2015, plaintiffs retained The Firm to represent their interests. On May 2, 2016, The Firm filed an amended complaint on behalf of plaintiffs, and added the Batra defendants as parties. More than two years later, on November 9, 2018, The Firm moved to withdraw as counsel for plaintiffs, claiming a breakdown in the attorney-client relationship and non-payment of

4

fees totaling $351,197.72.  The motion to withdraw was granted that day and a memorializing order was entered.

On December 19, 2018, The Firm filed a Law Division collection matter against plaintiffs in Essex County, where The Firm is located.[1]  Then on February 19, 2019, The Firm filed a motion pursuant to N.J.S.A. 2A:13-5 in the Middlesex County underlying action seeking to enforce its attorney's charging lien.  On April 4, 2019, plaintiffs retained Cho Legal Group, LLC (Cho Legal Group) to represent their interests.  On June 19, 2019, plaintiffs filed a notice of appeal from the trial court's May 10, 2019 order granting final judgment by default in the underlying Middlesex County matter.

While the appeal was pending, the Sarin defendants moved to release the bond on July 10, 2019.  Plaintiffs opposed the motion and cross-moved for a stay pending appeal.  All of the motions, including The Firm's motion to enforce its charging lien, were scheduled for oral argument on October 11, 2019.

In the interim, The Firm and Cho Legal Group engaged in motion practice in the Essex County collection action.  On August 13, 2019, the trial court in the Essex County collection action entered judgment by default, jointly and severally, against plaintiffs and in favor of The Firm pursuant to Rule 4:43-2(a).

---

[1] The docket number for the Essex County collection matter is ESX-L-8951-18.

The principal amount of The Firm's judgment was $351,197.72, plus post-judgment interest at the rate of ten percent.[2]  On September 4, 2019, The Firm docketed its judgment with the clerk of the Superior Court as a statewide lien. The Sarin and Batra defendants never docketed their respective orders awarding them sanctions with the Clerk of the Superior Court as statewide liens.  On October 11, 2019, the civil presiding judge of Essex County issued a writ of execution on The Firm's judgment in the collection matter and directed the sheriff to levy on the collateral funds deposited by plaintiffs with Aspen.

Also, on October 11, 2019, after conducting oral argument on the motions in the underlying Middlesex County litigation, and by way of an amended order dated October 30, 2019, the Middlesex Law Division court granted the Sarin defendants' motion for liquidation and disbursement of the supersedeas bond in the sum of $277,207.25, to satisfy its judgment obtained against plaintiffs, which failed to pay previously ordered amounts.  The Middlesex County trial court denied plaintiffs' cross-motion to stay collection efforts and for release of the bond without prejudice, instructed plaintiffs to file a renewed stay application

---

[2]  The record does not indicate why the rate of ten percent was used.

under Rules 2:9-5 and 2:9-6, and furnish a supersedeas bond.[3]  Finally, the trial court denied The Firm's motion to enforce its judgment without prejudice, determining the motion was premature and dependent on the outcome of the appeal.  In so ruling, the trial court stated:

> . . . there is no current basis on which the [p]laintiffs can obtain a monetary recovery to which a valid attorney's lien can arise under N.J.S.A. 2A:13-5 and attach to secure payment of unpaid legal services performed, and unreimbursed costs incurred, by the [p]etitioner [The Firm] for and on behalf of [p]laintiffs in connection with the [p]etitioner's prior legal representation of [p]laintiffs in this matter.

In compliance with the October 11, 2019 order, plaintiffs renewed the bond on October 18, 2019, which remains in effect until December 31, 2021. On October 23, 2019, plaintiffs filed their second motion for stay and dissolution of the supersedeas bond.  On November 25, 2019, Aspen accepted service of The Firm's notice of levy stating that the writ would remain attached to plaintiff's

---

[3]  The trial court determined the amount of the supersedeas bond should be in the "principal amount of $277,207.55 (which includes damages and pre-judgment interest, post-judgment interest through July 26, 2019, and previously awarded attorney's fees), together with a cushion of [twenty-four] months' worth of post-judgment interest that will accrue on the underlying [j]udgment from and after July 26, 2019 at the rates prescribed in R[ule] 4:42-11(a) until the appeal is adjudicated  so as to satisfy the requirements of R[ule] 2:9-5(a) and R[ule] 2:9-6(a)(1)."

collateral "subordinate only to Aspen's priority to the funds as a secured creditor."

> [T]he [w]rit of [e]xecution, . . . shall attach to any remaining portion of the collateral related to the [b]ond, less any attorneys' fees incurred by Aspen capped at $2[]500, preventing that balance from being distributed to defendants Diajewels of NY, Inc., Rajwarah Jewellers Pvt. Ltd., and Renu Sharma and/or any other individual or entity. The cap on attorneys' fees shall not apply in the event that Aspen files any motion or answer any complaint related to Aspen holding and/or turning over the balance of the collateral after disbursement to the Sarin [d]efendants as set forth above. In the event Aspen incurs additional attorneys' fees related to such action, Aspen shall be entitled to recoup such attorneys' fees from the balance of the collateral prior to disbursing same to [The Firm] related to a [m]otion for a [t]urnover of [f]unds as a result of its status as a secured creditor related to the collateral to secure the [b]ond. This balance, to be held and levied by Aspen pending [The Firms's] [m]otion for a [t]urnover of [f]unds, shall be initially up to $103,792.75, subject to the attorneys' fees provisions set forth above, representing the amount of the Bond ($381,000) less the judgment obtained by the Sarin [d]efendants which is to be paid from the [b]ond ($277,207.55). The [w]rit of [e]xecution shall remain attached to the collateral subordinate only to Aspen's priority to the funds as a secured creditor.

The Firm then filed a motion for turnover of funds in the collection action on December 4, 2019, nine days before the trial court issued the order under review.

The writ of execution and notice of levy provided that in the event of a liquidation of any portion of the $381,000 bond in the Middlesex litigation, Aspen was able to recover such proceeds from the collateral first and The Firm would be able to recover any remaining collateral held by Aspen, estimated at $103,792.75. On December 4, 2019, The Firm filed a motion for turnover of funds in the Essex County collection action.

The trial court heard oral argument on plaintiffs' second motion for stay on December 13, 2019. Counsel for two non-parties, The Firm, and Aspen, appeared for oral argument.

At the hearing, counsel for The Firm stated:

> [The Firm] will be taking no position as to the stay. Only that as Your Honor is aware, we have obtained a default judgment in the collection action in Essex County. A writ of execution has been provided, which Aspen has accepted regarding the collateral underlying the bond. So our position would be, Your Honor, in the event that the amount of the bond is reduced, that the order as provided by [plaintiffs] requiring the balance be remitted back to the [plaintiffs], . . . not be included in the order . . . because we believe that there may be an inconsistent obligation then imposed on Aspen in light of our pending motion for a turnover of funds, which is returnable next Friday.

After the trial court explained that the pending motion for turnover of funds depended on "the outcome of whether or not [the trial court] order[ed] the

liquidation or a partial liquidation of the bond," the following exchange took place:

> [Counsel for The Firm]: Our position is that with the writ of execution that was issued by the Essex County Court that we believe that that would attach to collateral that would be then available to the plaintiffs.
>
> The Court: Right. Which - - so as an execution lienor, if I were to reduce the amount of the [b]ond and order a partial liquidation for that excess, which would be the collateral that backs that excess, you have a lien that attaches to those proceeds. And your concern is if I direct the return and release of those proceeds and the funds in the liquidation of that excess directly to [plaintiffs].
>
> [Counsel for The Firm]: Correct.
>
> The Court: And that would be derogation of your execution lien rights that you've perfected in the Essex County matter.
>
> [Counsel for The Firm]: Correct. That's our concern, Your Honor.
>
> The Court: Okay. I understand that.

Following argument, the trial court placed its decision on the record and: (1) granted plaintiffs' motion to stay dissolution of the supersedeas bond; (2) ordered the partial liquidation of the supersedeas bond in the excess amount of $81,000; (3) ordered counsel for plaintiffs to pay $15,295.85 to counsel for the Sarin defendants to satisfy an attorney fee award entered on March 21, 2019; (4)

10

ordered plaintiffs' attorney to pay $11,009.08 to the Batra defendants to satisfy an attorney fee award entered by the court on March 21, 2019; and (5) ordered plaintiffs' attorney to hold the remaining $54,696.07 of the excess proceeds in his firm's trust account pending further order of the court.

No monies were directed to be paid to The Firm. In addition, the trial court indicated that The Firm should refile its motion for turnover of funds in the Middlesex County matter instead of the Essex County collection matter because the Middlesex County Law Division now had control of the bond proceeds.[4] This appeal followed.

On appeal, The Firm raises the following arguments for our consideration:

(1) The Firm has priority over defendants and is entitled to the remaining $103,792.75 in collateral;

(2) The Firm maintains the only executed lien over the remaining collateral and therefore is first in time and first in right;

(3) the collateral cannot be divided because The Firm's secured interest has priority; and

(4) in the alternative, The Firm has priority, at a minimum, to the remaining collateral of $54,696.07.

---

[4] The record shows that the trial court in Middlesex County ruled that The Firm did not have standing to intervene in the pending motion before it.

II.

"A trial court's interpretation of the law and the legal consequences that flow from established facts are not entitled to any special deference," Manalapan Realty, L.P. v. Twp. of Comm. of Manalapan, 140 N.J. 366, 378 (1995) and are instead reviewed de novo. Moreover, "[i]rrespective of when a judgment creditor obtains or dockets a judgment, the creditor who levies first has priority over all nonlevying judgment creditors[,]" and "even a junior levying creditor," "and has priority over all senior nonlevying judgment creditors in the distribution of the proceeds . . . ." New Brunswick Sav. Bank v. Markouski, 123 N.J. 402, 413 (1991) (citing N.J.S.A. 2A:17-39); see also N.J.S.A. 2A:17-5.

The Firm concedes it is third in line and subordinate to the judgment entered in favor of the Sarin defendants on their counterclaim, and Aspen, the secured creditor and issuer of the bond. N.J.S.A. 12A:9-322 cmt. 3; see also Shaw Mudge & Co. v. Sher-Mart Mfg. Co., 132 N.J. Super. 517, 521 (App. Div. 1974) ("[A] secured creditor . . . is entitled to priority over a subsequent lien creditor seeking to levy on or otherwise claim the same collateral.").

The Attorney Lien Act was passed in 1914 "to codify and expand the common law charging lien." Musikoff v. Jay Parrino's The Mint, L.L.C., 172 N.J. 133, 138, 141 (2002). The Act currently provides that an attorney appearing

12

for a party instituting an action "shall have a lien for compensation, upon his client's action, cause of action, [or] claim." N.J.S.A. 2A:13-5. The attorney's lien "shall contain and attach to a verdict, report, decision, award, judgment or final order in his [or her] client's favor, and the proceeds thereof in whosoever hands they may come." Ibid. See also Cole, Schotz, Bernstein, Meisel & Forman, P.A. v. Owens, 292 N.J. Super. 453, 460 (App. Div. 1996). Therefore, we conclude that The Firm's secured interest has priority and mandates the manner in which the bond should be distributed.

We have held that "the statutory [attorney's] lien is only an inchoate right, vesting only after a final judgment has been entered." Sauro v. Sauro, 425 N.J. Super. 555, 577 (App. Div. 2012). The purpose of an attorney's lien is to protect an attorney's right by considering the attorney "an equitable assignee of the judgment to the extent of his debt." Schepisi & McLaughlin, P.A. v. Lofaro, 430 N.J. Super. 347, 355 (App. Div. 2013) (quoting Republic Factors, Inc. v. Carteret Work Unifs., 24 N.J. 525, 534 (1957)). The Firm contends it has priority as a judicial lien creditor and the writ of execution issued in the Essex County collection matter over the Batra and Sarin defendants. And, The Firm asserts that by virtue of its writ of execution, notice of levy, and statewide lien, it properly attached plaintiffs' assets to its judgment and is entitled to

13                                                                                           A-1991-19

disbursement of the collateral, subject to the Sarin defendants' judgment on their counterclaim and Aspen's superior positions. We agree.

An attorney's lien is distinguishable from a judicial lien. A judicial lien creditor is a creditor who obtained a money judgment and subsequently gained rights in the debtor's collateral by virtue of obtaining a writ of execution and attaching or levying debtor's property. N.J.S.A. 12A:9-102(52); see also N.J.S.A. 12A:9-301. In other words, a judicial lien creditor is a creditor who: (1) establishes or acquires a lien; and (2) attaches its interest to the debtor's property. Ibid. Notably, a judicial lien creditor has priority over other general unsecured creditors because, "an [u]nperfected security interest is subordinate to the rights of a person who becomes a [judicial] lien creditor . . . ." Shaw Mudge, 132 N.J. Super. at 521.

In order to establish or acquire a lien, a creditor "need only enter a judgment in the records of the Superior Court; a levy and execution on real property owned by the judgment debtor are not required." New Brunswick Sav. Bank, 123 N.J. at 411. "The judgment is a binding judicial determination of the rights and duties of the parties to the action, and when recorded on the docket of the Clerk of the Superior Court, functions as notice of the debtor-creditor

14

relationship." Ibid. Moreover, "[a] holder of a docketed judgment has a lien on all real property held by the judgment debtor in the state." Id. at 412.

In order to secure its interest in the debtor's property, the judgment creditor may then obtain a writ of execution and levy on the debtor's personal property. See Morristown Mem. Hosp. v. Caldwell, 340 N.J. Super. 562, 566 (App. Div. 2001). The judgment creditor may then file a motion to turn over the funds it levied upon. Id. at 565. When more than one creditor seeks to levy the same funds, "the creditor who levies first has priority over all nonlevying judgment creditors" and all unsecured creditors. New Brunswick Sav. Bank, 123 N.J. at 413. "Under New Jersey law, priority is determined by order of executed liens and execution is determined by the date of delivery of a writ of execution to the sheriff and actual levy on the debtor's property." Gaskill v. Citi Mortg., Inc., 428 N.J. Super. 234, 242 (App. Div. 2012).

Rule 2:9-6, which governs the use of supersedeas bonds and other forms of security, provides that a trial court has the discretion to approve the amount and form of the supersedeas bond. Typically, "the bond or other form of security shall be conditioned for the satisfaction of the judgment in full, together with interest and trial costs . . . ." R. 2:9-6(a). However, the bond amount and form may be modified by the trial court "after notice and on good cause shown." Ibid.

 A-1991-19

We review a trial court's determination concerning a supersedeas bonds for abuse of discretion.  Grow Co., Inc. v. Chokshi, 403 N.J. Super. 443, 479 (App. Div. 2008) (stating this court does not need to determine whether the trial court abused its discretion by conditioning stay on the posting of a bond because the trial court did not have discretion to compel the posting of the bond).

Rule 2:9-6 addresses the necessary terms and conditions of the bond itself. See also Hudson City Sav. Bank v. Hampton Gardens Ltd., 88 N.J. 16, 20 (1981) ("The bond's necessary terms and conditions are provided by the Rules Governing the Courts.").  Generally, the bond is "conditioned for the satisfaction of the judgment in full, together with interest and trial costs" and is sufficient to fully satisfy any modification of the judgment, including any "additional interest and costs and damages as the appellate court may adjudge."  R. 2:9-6(a)(1). However, a trial court has the discretion to vary the terms of the bond "on good cause shown."  Ibid.  A court seeking to determine whether "good cause" exists will look to:

> . . . all relevant factors, including, but not limited to, the amount and nature of the judgment, anticipated interest and costs, the availability and cost of a supersedeas bond or other form of security, the assets of the judgment debtor and of the judgment debtor's insurers, sureties and indemnitors, if any, the judgment debtor's ability to dissipate assets, and the risk of harm to the parties on the appeal.

[R. 2:9-6(a)(2).]

Here, it is undisputed that The Firm's lien was reduced to a judgment and recorded as a statewide lien. Moreover, The Firm perfected its judgment by obtaining a writ of execution in the Essex County collection action and serving the writ on Aspen, which attached to the collateral, and levying on the collateral funds held by Aspen. Therefore, The Firm gained first priority over the Sarin and Batra defendants with respect to their orders awarding them sanctions. Moreover, contrary to the Sarin and Batra defendants' assertions, The Firm has an undeniable interest in the collateral held by Aspen. Subject to a turnover motion, The Firm is entitled to recover any remaining collateral held by Aspen as delineated earlier in this opinion.

We conclude that the Middlesex County Law Division erred and abused its discretion by disavowing The Firm's secured lien in the collateral as a priority lienholder. The December 13, 2019 order is hereby vacated. To the extent we have not addressed a particular argument, it is because either our disposition makes it unnecessary, or the argument was without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Reversed and remanded for entry of an order consistent with this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

17

A-1991-19