NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A-2928-14T2
          A-3036-14T2

JOHN GIOVANNI GRANATA,

      Plaintiff-Appellant,

v.

EDWARD F. BRODERICK, JR., ESQ., an
Attorney at Law of the State of New
Jersey; BRODERICK, NEWMARK & GRATHER,

      Defendants-Respondents.

_____

ROTENBERG, MERIL, SOLOMON, BERTIGER &
GUTILLA, P.C.; GOURVITZ & GOURVITZ,
LLC,

      Intervenors-Respondents.

_____

JOHN GIOVANNI GRANATA,

      Plaintiff-Respondent,

v.

EDWARD F. BRODERICK, JR., ESQ., an
Attorney at Law of the State of New
Jersey; BRODERICK, NEWMARK & GRATHER,

      Defendants-Respondents.

_____

OKS REALTY,

      Intervenor-Appellant,

**APPROVED FOR PUBLICATION**

**August 9, 2016**

**APPELLATE DIVISION**

and

ROTENBERG, MERIL, SOLOMON, BERTIGER &
GUTILLA, P.C.; GOURVITZ & GOURVITZ,
LLC,

        Intervenors-Respondents.

_____

        Argued June 1, 2016 — Decided August 9, 2016

        Before Judges Yannotti, St. John, and
        Guadagno.

        On appeal from the Superior Court of New
        Jersey, Law Division, Passaic County, Docket
        No. L-3278-07.

        Kenneth S. Thyne argued the cause for John
        Giovanni Granata (appellant in A-2928-14 and
        respondent in A-3036-14) (Roper & Thyne,
        LLC, attorneys; Mr. Thyne, on the brief).

        Robyne D. LaGrotta argued the cause for
        appellant OKS Realty in A-3036-14 (LaGrotta
        Law, LLC, attorneys; Ms. LaGrotta, of
        counsel and on the brief).

        Robert L. Podvey and Michael J.P. Schewe
        argued the cause for respondents Rotenberg,
        Meril, Solomon, Bertiger & Gutilla, P.C.
        (Podvey, Meanor, Catenacci, Hildner,
        Cocoziello & Chattman, P.C., attorneys; Mr.
        Podvey, of counsel; Robert K. Scheinbaum and
        Mr. Schewe, on the brief).

        Ari H. Gourvitz argued the cause for
        respondent Elliot H. Gourvitz (Gourvitz &
        Gourvitz, LLC, attorneys; Mr. Gourvitz, on
        the brief).

        Dominic V. Caruso, attorney for respondent
        Diane Marie Acciavatti, joins in the brief
        of respondent Elliot H. Gourvitz.

The opinion of the court was delivered by

GUADAGNO, J.A.D.

In these appeals, calendared back-to-back and consolidated for purposes of our opinion, plaintiff John Giovanni Granata appeals from Law Division orders dated January 15, 2015 and January 26, 2015. The first order granted $279,720 in attorney's fees to Granata's former attorney, Diane Marie Acciavatti, for her services in a legal malpractice action against defendants Edward F. Broderick, Jr., and Broderick, Newmark, & Grather. The second order denied Granata's motion for reconsideration.

Additionally, Granata and appellant OKS Realty (OKS), a creditor of Acciavatti, appeal from portions of a separate January 26, 2015 order determining distribution priorities of the attorney's fee award. The trial judge placed OKS behind three other creditors and rejected its claim of priority, which was based on a 2010 promissory note executed by Acciavatti and secured by her anticipated legal fees in the malpractice action.

Whether an attorney's pledge of anticipated counsel fees can be considered a security interest under Article 9 of the Uniform Commercial Code (UCC) is an issue of first impression in New Jersey. For the reasons that follow, we hold that it can, and affirm the order granting Acciavatti attorney's fees, but

reverse the distribution order and remand with instructions to recognize OKS's priority over the other creditors.

I.

We have previously considered issues related to these appeals in <u>Granata v. Broderick</u>, No. A-5272-10 (App. Div. July 8, 2013), <u>certif. denied</u>, 216 <u>N.J.</u> 7 (2013); <u>Gourvitz v. Colfax</u>, No. A-4887-10 (App. Div. May 24, 2013); and <u>Granata v. Prudential Insurance Co. of America</u>, No. A-7052-97 (App. Div. Dec. 28, 1998), <u>certif. denied</u>, 160 <u>N.J.</u> 88 (1999).

Granata began working for Prudential Insurance Company of America (Prudential) in 1986, selling property and casualty, life, and automobile insurance. <u>Granata v. Prudential Ins. Co. of Am.</u>, <u>supra</u>, slip op. at 2. Granata became licensed by the National Association of Securities Dealers (NASD) to sell securities and investments for Pruco, a wholly owned subsidiary of Prudential. <u>Ibid.</u> Prudential terminated Granata for violating company policy by signing a client's signature in an attempt to authorize a transfer of the client's money from a money market account to a bond mutual fund. <u>Id.</u> at 3. Granata admitted that he signed the form to transfer the funds, but claimed that the client requested the transfer. <u>Ibid.</u>

Granata filed a complaint for retaliatory discharge under the Conscientious Employee Protection Act, <u>N.J.S.A.</u> 34:19-1 to

-8, claiming that Prudential fired him in retaliation for complaining about discriminatory practices. Id. at 1, 4. Prudential moved to compel arbitration before the NASD. Id. at 2. The trial judge denied the motion, but we reversed, holding that Prudential's reason for termination "deals solely and specifically with securities issues, namely proper authorization to transfer client funds, which is within the expertise of NASD arbitrators." Id. at 14-15.

Defendants represented Granata before the NASD arbitration panel in 2001. Granata sought three million dollars in compensatory and punitive damages, but the NASD panel awarded him $28,000 in compensatory damages and assessed $12,530.50 in costs and fees against him.

In 2007, Granata retained Diane Acciavatti to bring a legal malpractice complaint against defendants. Acciavatti accepted a $10,000 retainer and agreed to a contingent fee arrangement.

A jury trial was held in July and August 2010. The jury found for Granata and awarded $525,000 for pre-termination damages and $385,000 for post-termination loss of renewal commissions. The judge awarded interest, bringing the judgment to $1,597,193.

Acciavatti filed a motion for counsel fees, litigation costs, and pre-judgment interest. Defendants opposed the motion

and moved for judgment notwithstanding the verdict (JNOV) and a new trial.  After oral argument on November 5, 2010, the trial judge granted Acciavatti's motion for fees and costs, denied defendants' motions for JNOV and a new trial, and reserved on the motion for pre-judgment interest.[1]  In April 2011, the judge granted the motion for pre-judgment interest in the amount of $208,000.

Defendants appealed, and Granata filed a cross-appeal. Acciavatti had an oral agreement with Granata to represent him at $350 per hour, and told him she would seek counsel fees from defendants "when we prevail in the Appellate Court."  We reversed and remanded for a new trial based on the judge's failure to give the jury an "exercise of judgment charge," and for the improper admission of a net opinion. Granata v. Broderick, supra, slip op. at 29-30.

In March 2013, while the appeal was pending, Acciavatti withdrew from the practice of law.  In April 2013, Dominic Caruso was appointed attorney-trustee for Acciavatti's practice. On March 28, 2013, the firm of Roper & Twardowsky, LLC (the Roper firm)[2] filed a substitution of counsel form for Acciavatti.

---

[1] OKS failed to include the November 5, 2010 transcript and the order entered thereafter in its appendix.

[2] The firm is now known as Roper & Thyne, LLC.

On July 15, 2013, Granata executed a retainer agreement with the Roper firm to bring a petition for certification to the Supreme Court. Acciavatti assisted the Roper firm in preparing the petition, which was denied on October 1, 2013. Granata v. Broderick, 216 N.J. 7 (2013). After remand, the Roper firm continued to represent Granata on a contingency basis.

In January 2014, following a two-day mediation, this case settled for $840,000. After settlement, three of Acciavatti's creditors claimed liens upon any legal fees owed to her from her work on the case.

The Gourvitz Lien

Gourvitz & Gourvitz, LLC and Elliot H. Gourvitz (collectively Gourvitz) represented Donna Day Colfax in her matrimonial litigation. A judgment of divorce (JOD) was entered in June 2006. Colfax discharged Gourvitz and appealed the JOD utilizing a different attorney.

Gourvitz sued Colfax for unpaid counsel fees, and Colfax filed a third-party complaint asserting malpractice claims against Gourvitz. Colfax discharged her attorney and retained Acciavatti in May 2009.

In January 2010, Colfax's malpractice claims were dismissed for her failure to answer interrogatories. On March 5, 2010, the court granted Gourvitz's motion for summary judgment, and on

March 17, 2010, a judgment for $368,209.30 was entered against Colfax. The judge denied Colfax's motion to vacate the dismissal of her malpractice claims.

Colfax retained new counsel and appealed the dismissal of her malpractice claims against Gourvitz. On May 24, 2013, we reversed, finding that the court failed to comply with Rule 4:23-5(a)(2), and abused its discretion when it denied Colfax's motion to vacate the dismissal order. Gourvitz v. Colfax, supra, slip op. at 25, 31-32. Although Acciavatti neglected several issues in the case, we found that the court "should have shielded the blameless client from the ultimate sanction of the dismissal of her malpractice claim." Id. at 31.

For reasons that are not clear in the record before us, Acciavatti agreed to pay Gourvitz $82,500 from fees she expected to receive in the Granata v. Broderick matter. On August 19, 2011, the trial judge in this matter entered an order affixing an attorney's lien on fees awarded to Acciavatti. The order declared that a "lien is placed on the file in the Granata v. Broderick matter in favor of [Gourvitz] for the sum of $82,500" and that there would be no disbursements of attorney's fees to Acciavatti in Granata v. Broderick until the fees were paid to Gourvitz.

Gourvitz's claim against Colfax was then resolved by a consent judgment entered on September 9, 2011. The judgment indicated that Gourvitz recovered $259,944.53 from Colfax in April 2010 and was paid $25,000 by Acciavatti in October 2010. Acciavatti assumed responsibility for the remaining portion of the judgment against Colfax and agreed to pay Gourvitz $82,500 within 82 months at a rate of $1000 per month.[3]

On October 6, 2011, Acciavatti defaulted on the consent judgment, and a $98,638.65 judgment was entered against her. On November 4, 2011, the judgment was recorded as a lien. On August 19, 2013, Gourvitz filed a writ of execution, seeking to satisfy the consent judgment through a levy on Acciavatti's assets and seizure of her property.

The Rotenberg Lien

The accounting firm of Rotenberg, Meril, Solomon, Bertiger & Guttilla, P.C. (Rotenberg) provided Colfax with accounting services in September 2003, and later filed suit for unpaid accounting fees. The action was consolidated and litigated as a third-party claim before the trial court in Gourvitz v. Colfax,

---

[3] It is unclear why Acciavatti assumed responsibility for the Colfax judgment or why the judge affixed an attorney's lien before she assumed that responsibility.

_supra_, slip op. at 2.[4]  Although not part of the appeal in _Gourvitz v. Colfax_, Colfax brought a third-party complaint against Rotenberg, asserting claims relating to Rotenberg's performance of accounting services.

On August 27, 2010, the trial court granted summary judgment in favor of Rotenberg and ordered Colfax to pay a $151,652.42 judgment to Rotenberg.  On February 4, 2011, the judgment was recorded as a lien.

On March 21, 2011, Acciavatti signed a settlement agreement with Rotenberg in which she assumed Colfax's debt to Rotenberg. Acciavatti agreed to pay Rotenberg $75,000 as part of the settlement agreement, in lieu of Colfax having to pay the full $151,652.42 judgment.  Acciavatti entered into a consent judgment with Rotenberg and signed an affidavit of judgment by confession.

Under the March 21, 2011 settlement agreement, Acciavatti agreed to assign a lien of $75,000 to Rotenberg on recovery of any attorney's fees due in _Granata v. Broderick_.  Acciavatti also agreed that she would not assign, convey, transfer, sell, or otherwise dispose of her interest in attorney's fees in this case without Rotenberg's prior written consent.  Acciavatti

---

[4] We referred to Rotenberg as the "Solomon defendants" in _Gourvitz v. Colfax_, _supra_, slip op. at 2.

agreed to pay $5000 to Rotenberg at the time of the agreement and an additional $1000 per month until the $75,000 was paid in full. The agreement provided that if Acciavatti defaulted on her obligation, the amount due would increase to the original $151,652.42, less any payments Acciavatti made toward the debt.

On April 14, 2011, Rotenberg and Colfax entered into a stipulation of dismissal in the Gourvitz v. Colfax litigation, ending Rotenberg's involvement in that case. Gourvitz v. Colfax, supra, slip op. at 12.

Acciavatti then defaulted under the Rotenberg settlement agreement and, on December 28, 2012, a final judgment of default was entered against Acciavatti in the amount of $133,652.42. The judgment was recorded as a lien on January 24, 2013.

In January 2014, a writ of execution was filed seeking to satisfy the Rotenberg settlement agreement through a levy on Acciavatti's assets. The writ was sent to the Passaic County Sheriff's Office on February 26, 2014. On March 19, 2014, Rotenberg served the writ upon defendants' counsel, who notified the court of the lien on March 25, 2014.

The OKS Lien

On October 27, 2010, OKS loaned Diane Marie Acciavatti, LLC (Acciavatti, LLC) $125,000. On that date, a security agreement, a promissory note, and a guaranty of payment were all executed

and signed by Acciavatti on behalf of Acciavatti, LLC.  The
security agreement identified as "collateral" the legal fees
owed to Acciavatti in the Granata v. Broderick matter.  The
promissory note indicated that monthly payments would begin on
December 1, 2010, and required Acciavatti to pay the full amount
on the loan either when she received legal fees from this case
or on November 1, 2013, whichever came earlier.

On December 2, 2010, OKS filed a UCC-1 financing statement
with the Department of Treasury, which listed as debtors both
Acciavatti, LLC and Acciavatti individually as guarantor of the
loan.  The statement listed as collateral the attorney's fees
due to Acciavatti in the litigation captioned Granata v.
Broderick.

Granata's motion seeking declaratory relief

After Granata and defendants settled, Acciavatti wrote to
the Roper firm to remind Granata of Gourvitz's lien on any
attorney's fees awarded to her.  Gourvitz previously made
Granata aware of the lien through correspondence to the Roper
firm in 2013.[5]  On February 6, 2014, trustee Caruso sent a notice
of attorney's lien to the Roper firm.

_____

[5] The record contains several letters from Gourvitz to the Roper
firm informing Granata of Gourvitz's lien on the attorney's fees
awarded in this case.  The Roper firm responded to Gourvitz's
inquiries and indicated that it would keep Gourvitz informed of
(continued)

On February 12, 2014, Granata, through the Roper firm, initiated this current action by filing a motion seeking "an order declaring that no attorney's lien attaches to any settlement proceeds payable to [Granata]." The motion was noticed to Acciavatti, Gourvitz, trustee Caruso, and defendants' counsel. Acciavatti's other two creditors, OKS and Rotenberg, were not noticed.

In a certification attached to the motion, Granata opposed "any application by attorneys other than my present counsel for an attorney's lien or an award of attorney's fees in this case," and sought an order declaring that Granata's "settlement is not subject to any claim for an attorney's lien or attorney's fees by [Acciavatti, trustee Caruso, or Gourvitz]." Granata asserted that, during Acciavatti's representation of him, he loaned her $28,000, which included a $3000 payment for an automobile.

Gourvitz filed a cross-motion seeking to enforce the August 19, 2011 attorney's lien. Trustee Caruso responded to Granata's motion with a certification that explained his involvement as a court-appointed trustee for Acciavatti's law practice and asserted that any award "for the work [Acciavatti] performed in the representation of [Granata] will be payable to me, as the

_____

(continued)
any attorney's fees awarded to Acciavatti, but would not share information about the status of the case on remand.

attorney-trustee," and "[a]ny distribution will then be made by me to [Acciavatti's] creditors, i.e., [Gourvitz], who has a judgment against [Acciavatti]."

Acciavatti submitted a certification detailing the work she performed in this case and estimating that she worked 828 hours until she withdrew.  Acciavatti admitted to borrowing $28,000 from Granata, but stated that she advised Granata to seek independent counsel, that she represented Granata pro bono in return in an unrelated legal matter, and that she anticipated repaying Granata from any attorney's fees awarded in this case.

On March 14, 2014, the judge who had presided over the original trial heard argument on Granata's motion.  The judge found that Acciavatti's withdrawal from this case was involuntary and that she was entitled to a fee based upon quantum meruit.  The judge determined that Granata was entitled to two-thirds of the settlement amount and ordered Broderick to issue a check for the full settlement amount of $840,000 to the Roper firm, with two-thirds to be released to Granata and one-third to be held in escrow in the Roper firm's trust account for any subsequent award of attorney's fees.

The judge then ordered the Roper firm to provide trustee Caruso with a breakdown of the hours it spent on this case, and reserved ruling on an attorney's fee award to either Acciavatti

14                                                      A-2928-14T2

or the Roper firm subject to further briefing from Acciavatti's creditors.

Rotenberg, who was the only creditor not present for the hearing, then served its writ of execution upon defendants' counsel, who informed the court of Rotenberg's lien on any attorney's fee award.

On March 17, 2014, Acciavatti filed for bankruptcy, which temporarily stayed the proceedings. Acciavatti, LLC did not file for bankruptcy. In June 2014, a notice of proposed abandonment was executed in the bankruptcy proceedings, whereby Acciavatti agreed to abandon the potential attorney's fee award from this case. Acciavatti acknowledged that any fee award was first "subject to allocation between [her] and [the Roper firm]." Acciavatti recognized that any attorney's fee award to her would then be distributed among her creditors, listing OKS's lien of approximately $119,000, Gourvitz's lien of approximately $90,000, and Rotenberg's lien of approximately $135,000. On June 20, 2014, a bankruptcy discharge was granted and the stay on proceedings was subsequently lifted.

On July 7, 2014, the Roper firm wrote to trustee Caruso and informed him that the Roper firm and Granata agreed to a flat fee of $40,000. At a conference on August 8, 2014, the judge indicated that, of the $279,720 available for distribution,

$40,000 would go to the Roper firm.  The Roper firm withdrew that amount from the escrowed funds, but the judge sought additional briefing as to how to disburse the remaining funds.

On August 27, 2014, while the issue of the distribution of Acciavatti's fees was still being litigated, Granata filed a legal malpractice complaint against Acciavatti and Acciavatti, LLC.  The complaint alleged that Acciavatti failed to serve interrogatories or obtain appropriate expert reports for Granata; demanded $28,000 in personal loans from Granata before and during trial; failed to disclose to Granata that she pledged attorney's fees in this case to her creditors; and failed to request oral argument before the Appellate Division.  Granata claimed that these deficiencies caused him to settle for a "compromised amount."  The complaint asserted that the $1.5 million jury verdict that Acciavatti received on Granata's behalf was "a lesser amount than [what would have been awarded] had [Granata's] case been prepared properly."  As a result of the alleged malpractice, Granata argued that Acciavatti should be equitably estopped from receiving attorney's fees for her work in this case.

After the filing of this complaint, Granata retreated from his earlier position that Acciavatti should receive some fees for her work, and argued that any consideration of claims by the

creditors or trustee Caruso should await the outcome of the legal malpractice case. Granata conceded that trustee Caruso successfully opposed his motion for a declaration that there is no attorney's lien, but argued that the failure of Caruso and Acciavatti to file a petition for a lien was a procedural barrier precluding any lien for Acciavatti's attorney's fees.

On January 9, 2015, the judge found that neither Granata's malpractice complaint nor trustee Caruso's failure to file a petition for an attorney lien procedurally barred an award of attorney's fees to Acciavatti. The judge then addressed distribution of Acciavatti's attorney's fee award to her creditors.

The judge determined that OKS was last in priority because the $840,000 settlement was not finalized until January 2014, and before that, OKS had "done nothing but filed a UCC back in 2010 . . . on an asset that didn't exist until four years later." He reasoned that OKS had "a security interest in something that didn't even exist," while Rotenberg and Gourvitz both had judgments and issued writs of execution.

The judge also noted that OKS made its loan to Acciavatti, LLC, and that Acciavatti was the guarantor of the loan. He reasoned that because Acciavatti resigned from practicing law and filed for bankruptcy, OKS's loan was made to an LLC which is

17                                                           A-2928-14T2

no longer in existence. The judge concluded that "[OKS] has done absolutely nothing beyond getting a UCC on something that is going to become due and payable to a [non-existent] entity . . . and the guarantor has gone through bankruptcy."

The judge did not rule on an argument raised by Gourvitz that OKS was not entitled to distribution because it was a foreign bank. Relying on the September 9, 2011 consent judgment issued in Gourvitz v. Colfax, the judge declared that Gourvitz had priority on any attorney's fees issued to Acciavatti because Rotenberg was a party in Gourvitz v. Colfax and was aware of Gourvitz's lien.

The judge determined that the attorney's fee award would be one-third of the settlement amount held in escrow, or $279,720, and would be distributed as follows:

> (1) $40,000 to Granata's attorneys, the Roper firm, pursuant to the previously-entered flat fee agreement;
>
> (2) $9597.56 to trustee, Dominic Caruso;
>
> (3) $82,045.24 to Gourvitz;
>
> (4) $133,652.42 to Rotenberg; and
>
> (5) the remaining $14,424.78 to OKS.

The judge denied Granata's motion for a stay and ordered the funds be released by the Roper firm to trustee Caruso for distribution. On January 12, 2015, and again on January 14,

2015, the Roper firm refused to transmit the escrowed funds to trustee Caruso, indicating its intent to seek a stay in the Appellate Division and to move for reconsideration. On January 15, 2015, the judge issued an order memorializing Acciavatti's fee award and ordering the transfer of funds. That day, trustee Caruso filed an order to show cause to hold the Roper firm in contempt for failure to comply with the court's directive.

On January 22, 2015, the judge entered an order holding the Roper firm in contempt and sanctioning it $200. On January 26, 2015, the judge entered an order memorializing the court's January 9, 2015 decision, setting the amounts to be distributed and the order of priority of Acciavatti's creditors: (1) $83,284.97 to Gourvitz;[6] (2) $133,652.42 to Rotenberg; and (3) $13,185.05 to OKS. Finally, the judge ordered the Roper firm to pay counsel fees associated with the order to show cause to trustee Caruso and counsel for each creditor.

On January 26, 2015, the judge denied a motion by Granata for reconsideration. On January 30, 2015, we denied Granata's motion for a stay.

Granata now appeals from both the January 15, 2015 order awarding counsel fees to Acciavatti and the January 26, 2015

---

[6] It is not clear why the amounts to Gourvitz and OKS contained in this order differ slightly from the amounts contained in the judge's January 9, 2015 decision.

order denying his motion for reconsideration. OKS appeals from the court's January 26, 2015 order relegating it to last in the priority of Acciavatti's creditors.

II.

Granata first argues that the judge erred in granting Acciavatti an attorney's fee award without the filing of a petition for an attorney's lien. Gourvitz and Rotenberg argue that a filing of a petition was not required.

N.J.S.A. 2A:13-5, commonly known as the Attorney's Lien Act (Act), provides, in pertinent part:

> After the filing of a complaint . . . the attorney or counsellor at law, who shall appear in the cause for the party instituting the action . . . shall have a lien for compensation, upon his client's action, . . . which shall contain and attach to a verdict, report, decision, award, judgment or final order in his client's favor, and the proceeds thereof in whosesoever hands they may come. The lien shall not be affected by any settlement between the parties before or after judgment or final order, nor by the entry of satisfaction or cancellation of a judgment on the record. The court in which the action or other proceeding is pending, upon the petition of the attorney or counsellor at law, may determine and enforce the lien.

In H. & H. Ranch Homes, Inc. v. Smith, we established a specific procedure for determining and enforcing an attorney's lien:

> The attorney should make application to the court, as a step in the proceeding of the main cause, by way of petition, which shall set forth the facts upon which he relies for the determination and enforcement of his alleged lien. The petition shall as well request the court to establish a schedule for further proceedings which shall include time limitations for the filing of an answer by defendants, the completion of pretrial discovery proceedings, the holding of a pretrial conference, and the trial. The court shall, by order, set a short day upon which it will consider the application for the establishment of a schedule. A copy of such order, together with a copy of the petition, shall be served upon defendants as directed by the court. The matter should thereafter proceed as a plenary suit and be tried either with or without a jury, in the Law Division[.]
>
> [54 N.J. Super. 347, 353-54 (App. Div. 1959).]

Granata argues that the failure of Acciavatti or trustee Caruso to file a petition consistent with this procedure requires reversal of the order granting Acciavatti an attorney's lien. We disagree.

In Musikoff v. Jay Parrino's the Mint, L.L.C., the Court held that "the Act is grounded in equitable principles and was designed to protect attorneys who have represented their former clients competently and with diligence, but have gone unpaid." 172 N.J. 133, 146 (2002).

Here, Granata initiated this action by filing a motion seeking an order declaring that no attorney's lien attaches to

any settlement proceeds payable to Granata. Gourvitz responded with a cross-motion to enforce the court's August 19, 2011 order, which affixed an attorney's lien in his favor for $82,500 to be paid from the fees awarded to Acciavatti in this matter. Acciavatti and trustee Caruso then provided certifications detailing the amount of work that Acciavatti performed in preparing this case. Acciavatti's certification provided specific detail of the 828 hours of work she performed, and acknowledged that she borrowed $28,000 from Granata to be paid back from her anticipated counsel fees. A hearing was held on Granata's motion on March 14, 2014.

While Granata objected to compensating Acciavatti on a quantum meruit basis for the work she performed, he did not dispute the number of hours worked[7] or the loan repayment arrangement as alleged by Acciavatti. When pressed by the judge, counsel for Granata conceded that he could not say "in candor as an officer of the court" that giving nothing to Acciavatti "for the work she did on the Granata case would be a fair result."

---

[7] The Roper firm's certification in support of Granata's motion was critical of certain aspects of Acciavatti's performance, such as her failure to obtain updated expert reports and failure to prepare summaries of the transcripts she reviewed; however, there was no challenge to the number of hours she claimed to have worked on the case.

On July 7, 2014, counsel for Granata wrote to Caruso, indicating that her firm agreed to accept a flat fee settlement of $40,000, and requesting that Caruso consent to the release of that sum from the monies being held by her firm.

We employ a deferential standard of review and will affirm the factual determinations of the trial judge, provided they are supported by adequate, substantial, and credible evidence. Rova Farms Resort, Inc. v. Inv'rs Ins. Co. of Am., 65 N.J. 474, 484 (1974).  However, questions of law and the legal consequences that flow from the established facts are reviewed de novo. Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995).

Given our narrow scope of review, we are satisfied that the motion judge was presented with abundant, unchallenged evidence to support his quantum meruit findings, and Granata has failed to demonstrate any procedural irregularities that would require reversal of the order granting attorney's fees to Acciavatti.

We review the court's denial of Granata's motion for reconsideration under an abuse of discretion standard. Fusco v. Bd. of Educ., 349 N.J. Super. 455, 462 (App. Div.), certif. denied, 174 N.J. 544 (2002).  "Motions for reconsideration are granted only under very narrow circumstances[.]" Ibid. "Reconsideration should be used only for those cases which fall

into that narrow corridor in which either (1) the Court has expressed its decision based upon a palpably incorrect or irrational basis, or (2) it is obvious that the Court either did not consider, or failed to appreciate the significance of probative, competent evidence." Ibid. (quoting D'Atria v. D'Atria, 242 N.J. Super. 392, 401 (Ch. Div. 1990)).

Granata argues there were "numerous factual disputes" that the court "summarily determined" without holding a plenary hearing, but does not identify any of these disputes. During oral argument on Granata's motion for reconsideration, the judge questioned Granata's counsel as to what factual disputes were not resolved. Counsel responded that the court awarded Acciavatti an "enhanced fee" under Rule 1:21-7(f) that was "ordinarily done on application." This is not a contested fact, but a challenge to the procedure employed by the judge. Although Rule 1:21-7(f) directs an attorney to make an application if a permitted fee is deemed inadequate, the rule's intent is only to require that the application complies with the procedural requirements of notice and a hearing. In re Estate of F.W., 398 N.J. Super. 344, 356 (App. Div. 2008). Here, those procedural requirements were met as a result of the hearing held after Granata made the initial motion seeking declaratory relief.

Granata next argues that the judge erred in disregarding his malpractice complaint against Acciavatti.  The judge followed the procedure established in Saffer v. Willoughby, which required him to determine whether there was a "substantial basis" to the malpractice action before determining Acciavatti's attorney's fee award. 143 N.J. 256, 268 (1996).

Saffer involved a fee dispute between an attorney and former client. Id. at 260.  The client filed a request for fee arbitration and, before a decision was reached, the client discovered evidence that led him to file a legal malpractice claim in the Law Division against his former attorney. Ibid.

The Court held that where a "substantial basis" for a malpractice claim is discovered after a fee is awarded, a client may seek a stay of the award either before or after the award has been confirmed. Id. at 268.

The granting of a stay is discretionary with the trial court and "limited only by special equities showing abuse of discretion in that injustice would be perpetrated on the one seeking the stay, and no hardship, prejudice or inconvenience would result to the one against whom it is sought." Gosschalk v. Gosschalk, 48 N.J. Super. 566, 579 (App. Div.), aff'd, 28 N.J. 73 (1958).

At the January 9, 2015 proceeding, the judge determined that Granata did not make out a substantial claim of malpractice, primarily because Acciavatti received a $1.5 million jury verdict for Granata, which ultimately resulted in an $840,000 settlement award. As the judge astutely observed, "if that's malpractice . . . lawyers are held to a very high standard."

The elements of a legal malpractice claim "are (1) the existence of an attorney-client relationship creating a duty of care by the defendant attorney, (2) the breach of that duty by the defendant, and (3) proximate causation of the damages claimed by the plaintiff." McGrogan v. Till, 167 N.J. 414, 425 (2001).

Granata's malpractice complaint fails to sufficiently assert a substantial basis for causation and damages. "The general rule in this State is that an attorney is only responsible for a client's loss if that loss is proximately caused by the attorney's legal malpractice." 2175 Lemoine Ave. Corp. v. Finco, Inc., 272 N.J. Super. 478, 487 (App. Div.), certif. denied, 137 N.J. 311 (1994). "The test of proximate cause is satisfied where the negligent conduct is a substantial contributing factor in causing the loss." Ibid.

The allegations contained in Granata's malpractice complaint relate to actions taken by Acciavatti before our remand of the $1.5 million jury award she obtained. Following our remand, it is undisputed that Acciavatti did not participate in any aspect of this case. Granata was free to again proceed to trial or settle the suit; he chose to settle after mediation for $840,000.

Granata does not claim that, in settling the case, he relied to his detriment on any advice or action by Acciavatti, who no longer represented him. See Grunwald v. Bronkesh, 131 N.J. 483, 495 (1993) ("Legally-cognizable damages occur when a plaintiff detrimentally relies on the negligent advice of an attorney."). Yet, Granata nonetheless surmises that his settlement on remand was for less than what he would have obtained had Acciavatti represented him more competently. This conjecture is insufficient to demonstrate proximate cause. Lemoine, supra, 272 N.J. Super. at 488 (client's burden to show proximate cause must be sustained by preponderance of competent, credible evidence, and is not satisfied by mere conjecture, surmise or suspicion).

Contrary to Granata's assertions, it is not clear that Acciavatti violated any rule of professional conduct where, as here, Acciavatti advised Granata to seek independent advice of

27

counsel before Granata loaned her $28,000.  See In re Youmans, 118 N.J. 622, 633 (1990) ("[A]n attorney is ethically required to advise clients to obtain independent counsel before making a loan to that attorney.").  Even if Acciavatti did not advise Granata to seek independent counsel, Granata must still establish proximate cause. Petrillo v. Bachenberg, 263 N.J. Super. 472, 483 (App. Div. 1993) (violation of rule of professional conduct does not per se give rise to malpractice), aff'd, 139 N.J. 472 (1995); Albright v. Burns, 206 N.J. Super. 625, 634-35 (App. Div. 1986) (even when plaintiff establishes rule violation, she must establish proximate cause).

We are satisfied that it was not an abuse of discretion for the judge to deny Granata's request for a stay pending the outcome of his malpractice claim, as there was ample support in the record for the conclusion that there was not a substantial basis to the claim.

Finally, Granata contends that the court erred in awarding Acciavatti fees in excess of what she was entitled to under her retainer agreement.  Acciavatti was originally retained by Granata on a contingent fee basis, with a $10,000 retainer.

"An attorney hired on a contingent fee basis and later discharged before completion of the services is not entitled to recover fees on the basis of such contingent agreement; instead,

he or she may be entitled to recover on a quantum meruit basis for the reasonable value of the services rendered." Glick v. Barclays De Zoete Wedd, Inc., 300 N.J. Super. 299, 310 (App. Div. 1997). The equitable doctrine of quantum meruit means "as much as he deserves." La Mantia v. Durst, 234 N.J. Super. 534, 537 (App. Div.), certif. denied, 118 N.J. 181 (1989). We have identified several factors that courts should consider in applying the doctrine: (1) the amount of time an individual attorney spent on the case in relation to the total amount of professional hours spent to resolve it; (2) the quality of representation provided; (3) the results achieved by each lawyer's efforts; (4) the reason the client switched representation; (5) the viability of the client's claims at the time of transfer; and (6) the amount of recovery ultimately realized. Id. at 540-41. "[T]he crucial factor in determining the amount of recovery is the contribution which the lawyer made to advancing the client's cause." Glick, supra, 300 N.J. Super. at 311.

We note that the judge who made the quantum meruit fee determination presided over the jury trial, which resulted in a $1.5 million verdict in Granata's favor, and approved the $840,000 mediated settlement. The judge was presented with well-documented proof of the extensive work Acciavatti performed

during each phase of litigation. We are satisfied that this evidence provided ample support for the judge's decision to award an attorney's fee to Acciavatti based on quantum meruit.

### III.

OKS claims that the trial judge erred in placing it last in priority among Acciavatti's creditors and argues that it had a perfected security interest in any legal fees owed to both Acciavatti and Acciavatti, LLC on December 2, 2010, before the Gourvitz or Rotenberg liens were filed.

Gourvitz and Rotenberg argue that OKS should be barred from challenging the priority order, as it failed to file any motions or pleadings, and never intervened as a party. They also argue that OKS's UCC-1 financing statement did not perfect its security interest and did not attach; that Acciavatti's debt to OKS was discharged in bankruptcy; that OKS's interest was in Acciavatti, LLC, which ceased to exist when Acciavatti was awarded attorney's fees; that OKS is a foreign bank; and that OKS's interest was not perfected until attorney's fees were awarded in 2015, making it a junior creditor.

As an initial matter, we note that none of the creditors in this action formally intervened under Rule 4:33-1. Gourvitz filed a cross-motion in response to Granata's motion to preclude attorney's fees, and all three creditors filed letter briefs

espousing their positions as to the distribution of the escrowed funds. Rule 4:33-1 is clear that intervention as of right is afforded to parties who claim "an interest relating to the property or transaction which is the subject of the action and is so situated that the disposition of the action may as a practical matter impair or impede the ability to protect that interest." We are satisfied that each of the creditors was entitled to intervene as of right. Therefore, procedurally, each of their opposition letters are deemed to be motions to intervene as of right pursuant to Rule 4:33-1. See DNI Nevada, Inc. v. Medi-Peth Med. Lab, Inc., 337 N.J. Super. 313, 313 n.1 (App. Div. 2001) (bank's opposition to motion for turnover of funds deemed motion to intervene as of right pursuant to Rule 4:33-1).

On October 27, 2010, following the $1.5 million jury verdict, but before our decision vacating that verdict, Acciavatti, LLC obtained a loan from OKS which Acciavatti guaranteed. On that date, a security agreement, a promissory note, and a guaranty of payment were all executed and signed by Acciavatti on behalf of Acciavatti, LLC. On December 2, 2010, OKS filed a UCC-1 financing statement, listing as debtors both Acciavatti, LLC and Acciavatti as guarantor of the loan. The statement identified the collateral as legal fees due to

Acciavatti in the litigation, Granata v. Broderick, and noted that judgment was entered on August 23, 2010.

Gourvitz is a lien creditor. On September 9, 2011, a consent judgment was entered in Gourvitz v. Colfax, whereby Acciavatti assumed responsibility for a debt obligation to Gourvitz as a result of a March 5, 2010 summary judgment order entered against Acciavatti's client, Colfax, for collection of unpaid legal fees. On August 19, 2011, even though Acciavatti had not yet assumed responsibility for the debt, the trial judge entered an order declaring that Gourvitz had a lien on any attorney's fees awarded to Acciavatti in this case. On November 4, 2011, Gourvitz's judgment was recorded as a lien, and a writ of execution was filed on August 19, 2013.

Rotenberg is also a lien creditor. Acciavatti assumed a debt obligation to Rotenberg pursuant to a March 21, 2011 settlement agreement. On that same day, Acciavatti entered into a consent judgment with Rotenberg, which was recorded as a lien on January 24, 2013. A writ of execution was filed in January 2014.

The trial judge placed OKS behind Gourvitz and Rotenberg in priority because OKS filed its UCC financing statement in 2010 "on an asset that didn't exist until four years later." The judge held that OKS had a security interest in Acciavatti's

claim to attorney's fees, but that, at the time of the UCC filing, the interest did not exist.

We must determine whether Acciavatti possessed an interest in her anticipated legal fees in 2010, and whether OKS's UCC filing granted it a perfected interest in those fees. If both questions are answered in the affirmative, OKS, as a perfected secured creditor, would enjoy priority over Gourvitz and Rotenberg, who are subsequent lien creditors seeking to levy on the same collateral. See Shaw Mudge & Co. v. Sher-Mart Mfg. Co., 132 N.J. Super. 517, 521 (App. Div. 1975) (perfected security interest has priority over lien creditor whether or not lien creditor has knowledge of the security interest).

N.J.S.A. 12A:9-203(a) provides that a "security interest attaches to collateral when it becomes enforceable against the debtor with respect to the collateral, unless an agreement expressly postpones the time of attachment." N.J.S.A. 12A:9-203(b) provides, in pertinent part, that a security interest attaches to collateral as soon as: (1) "value has been given"; (2) "the debtor has rights in the collateral or the power to transfer rights in the collateral to a secured party"; and (3) "the debtor has authenticated a security agreement that provides a description of the collateral."

To perfect a security interest under N.J.S.A. 12A:9-310(a), a financing statement must be filed. Under N.J.S.A. 12A:9-502(d), that financing statement may be filed before a security agreement is made or a security interest otherwise attaches. Under N.J.S.A. 12A:9-315(a)(2), "a security interest attaches to any identifiable proceeds of collateral."

In Shaw Mudge, supra, a manufacturing company, Sher-Mart, borrowed $50,000 from a bank, secured by a promissory note and an agreement granting the bank a first security interest in collateral, including Sher-Mart's accounts receivable "now owned, held and/or hereafter to be created." 132 N.J. Super. at 519. A financing statement was filed simultaneously. Ibid. Shaw Mudge sued Sher-Mart to recover on a book account. Ibid. Judgment, including interest and costs, was entered in favor of Shaw Mudge. Ibid. Shaw Mudge then levied on a Sher-Mart account receivable and sought an order directing the obligor to pay the amount of its judgment. Ibid. Sher-Mart opposed the motion and the matter was scheduled for hearing. Ibid.

Prior to the hearing, the bank assigned its rights in the Sher-Mart security agreement to the Small Business Administration (SBA) and filed a financing statement covering the assignment. Ibid. At the time, Sher-Mart owed the SBA in excess of $48,000. Ibid. When Sher-Mart failed to make an

34                                                    A-2928-14T2

installment payment on its note, the SBA declared Sher-Mart in default and demanded payment in full. Id. at 519-20. The SBA moved to vacate the levy and sought the amount due on the account receivable. Id. at 520. The motion judge upheld the levy. Ibid.

The SBA appealed, and we reversed, holding that a secured creditor who has filed a financing statement is entitled to priority over a subsequent lien creditor seeking to levy on or otherwise claim the same collateral. Id. at 520-21. We also noted that the rule applies to after-acquired collateral covered by the agreement, provided that attachment has occurred. Id. at 522. We explained that the fact that there had not yet been a default on the secured bank loan at the time of the Shaw-Mudge levy was not determinative, as "[t]he rights of the parties were fixed, not when the levy was made . . . but rather when the security interest attached." Ibid.

Under N.J.S.A. 12A:9-102(a)(2), an "account" includes a right to payment of a monetary obligation, whether or not earned by performance, for services rendered or to be rendered. A "secured party" is defined as "a person in whose favor a security interest is created or provided for under a security agreement, whether or not any obligation to be secured is outstanding." N.J.S.A. 12A:9-102(a)(72)(A).

Although no reported New Jersey case has considered whether an attorney's pledge of an anticipated counsel fee can be considered a receivable under UCC Article 9, other courts have uniformly held that contracts for legal fees, including fees in pending contingency fee cases, are accounts for Article 9 purposes. See Cadle Co. v. Schlichtmann, 267 F.3d 14, 18-19 (1st Cir. 2001) (amounts to be paid under contingent fee agreements are accounts under Article 9), cert. denied, 535 U.S. 1018, 122 S. Ct. 1607, 152 L. Ed. 2d 622 (2002); In re Holstein Mack & Klein, 232 F.3d 611, 614-15 (7th Cir. 2000) (fees to be earned from personal injury and class action suits by law firm considered receivables); U.S. Claims, Inc. v. Yehuda Smolar, P.C., 602 F.Supp. 2d 590, 597 (E.D. Pa. 2009) (assignment of amounts owed under contingent fee agreement governed by Article 9); U.S. Claims, Inc. v. Flomenhaft & Cannata, LLC, 519 F. Supp. 2d 515, 521 (E.D. Pa. 2006) (fee contracts created rights to receive payment for services to be rendered by law firm on behalf of clients and thus fell squarely within definition of account).

We agree with these decisions and hold that, under certain circumstances, an attorney's pledge of anticipated counsel fees can be considered an account receivable and secured under Article 9.

OKS met the requirements of N.J.S.A. 12A:9-203 for its security interest to attach to Acciavatti's counsel fees. The OKS security agreement described the collateral as Acciavatti's attorney's fees in this case and Acciavatti had a transferrable interest to the collateral, as the anticipated attorney's fees qualified as an account under N.J.S.A. 12A:9-102(a)(2).

OKS also complied with the requirements to perfect its security interest under N.J.S.A. 12A:9-310(a) and -315(a)(2) by filing a financing statement covering the collateral of Acciavatti's anticipated counsel fees. When OKS filed its financing statement on December 2, 2010, it perfected its security interest in Acciavatti's anticipated legal fees, whether owed to Acciavatti or Acciavatti, LLC. As such, OKS's security interest was perfected before Gourvitz or Rotenberg obtained their liens and, therefore, OKS enjoyed priority over both.

The judge's conclusion that OKS had a security interest in an asset that did not exist until four years later ignored the clear language of the security agreement, which identified the collateral for the loan to Acciavatti as the legal fees she anticipated receiving for her work in this case. The agreement was executed after the jury had returned a $1.5 million verdict in Granata's favor. Our subsequent decision vacating the jury

37                                                    A-2928-14T2

verdict had no effect on Acciavatti's claim for fees for work she had already performed on the case. Her claim was validated with the judge's quantum meruit award, at which time OKS's prior recorded lien attached. See Cont'l Fin., Inc. v. Cambridge Lee Metal Co., 56 N.J. 148, 152 (1970) (value of company's accounts receivable could not have been fixed or ascertained at time of recording of lien, but when they did materialize, they became property of party to which prior recorded lien immediately attached).

Although the exact amount of Acciavatti's fee was unknown at the time of the OKS filing, its lien was sufficiently specific and perfected, as the identity of the lienor, the property subject to the lien, and the amount of the lien were all established. Id. at 151 (citing United States v. Equitable Life Assurance Soc'y, 384 U.S. 323, 327-28, 86 S. Ct. 1561, 1564, 16 L. Ed. 2d 593, 597 (1966)).

The additional arguments made by Gourvitz and Rotenberg lack sufficient merit to warrant discussion in our opinion beyond the following brief comment. R. 2:11-3(e)(1)(E). Gourvitz has provided no proof in support of the claim that OKS is a foreign bank, which is presented "upon information and belief." OKS responds that it is a partnership formed in New

Jersey, and is not required to file formation or authorization documents for the public record in New Jersey.

IV.

The January 15, 2015 order granting $279,720 in attorney's fees to Acciavatti and the January 26, 2015 order denying Granata's motion for reconsideration are affirmed. The January 26, 2015 order setting distribution priorities is vacated and the matter remanded for proceedings consistent with our opinion. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION