**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3930-17T1

JOHN GIOVANNI GRANATA,

     Plaintiff,

v.

EDWARD F. BRODERICK, JR.,
ESQ., an Attorney at Law of the
State of New Jersey, BRODERICK,
NEWMARK & GRATHER,

     Defendants,

and

ROTENBERG, MERIL, SOLOMON,
BERTIGER & GUTILLA, PC,

     Intervenor,

and

ELLIOT H. GOURVITZ, ESQ.,

     Intervenor-Respondent,

and

OKS REALTY,

Intervenor-Appellant.

_____

Argued January 23, 2019 – Decided February 6, 2019

Before Judges Yannotti and Natali.

On appeal from Superior Court of New Jersey, Law Division, Passaic County, Docket No. L-3278-07.

Kenneth S. Thyne argued the cause for appellant (Roper & Thyne, LLC, attorneys; Kenneth S. Thyne, on the briefs).

Ari H. Gourvitz argued the cause for respondent Elliot H. Gourvitz (Gourvitz & Gourvitz, LLC, attorneys; Ari H. Gourvitz, on the brief).

PER CURIAM

Intervenor OKS Realty (OKS) appeals from a March 23, 2018 order denying its application for reasonable attorney's fees, interest, and late fees on an outstanding lien. Because the trial court failed to set forth its legal conclusions and factual findings in accordance with Rule 1:7-4, we reverse the March 23, 2018 order and remand for further proceedings.

I.

OKS's appeal is the latest chapter in this protracted litigation related to the appropriate priority and distribution of three liens held by intervenors OKS, Elliot H. Gourvitz, Esq. (Gourvitz), and accounting firm Rotenberg,

Meril, Solomon, Bertiger & Gutilla (Rotenberg).[1]  The procedural history and facts underlying the dispute are fully detailed in our published opinion. Granata v. Broderick, 446 N.J. Super. 449 (App. Div. 2016), aff'd, 231 N.J. 135 (2017).  We briefly recount that history to provide context for our decision and also add additional, pertinent facts from the trial proceedings that led to the entry of the March 23, 2018 order.

Plaintiff John Giovanni Granata filed a complaint against Prudential Insurance Company of America (Prudential) alleging he was improperly fired in violation of the Conscientious Employee Protection Act, N.J.S.A. 34:19-1 to -8.  After the court denied Prudential's application to compel arbitration, Prudential appealed, and we reversed.  Granata v. Prudential Ins. Co. of Am., No. A-7052-97 (App. Div. Dec. 28, 1998).

Defendants Edward F. Broderick, Jr., Esq. and Broderick, Newmark & Grather, represented plaintiff before the arbitration panel.  The panel awarded plaintiff $28,000 in compensatory damages but assessed $12,530.50 in fees and costs against him.  In 2007, plaintiff retained then-attorney Diane

---

[1]  We have been advised by the parties that OKS and Rotenberg settled. Rotenberg has not participated in this appeal.

Acciavatti of Acciavatti, LLC, (Acciavatti) to prosecute a legal malpractice action against defendants.

Following a lengthy trial, a jury awarded plaintiff $910,000 in damages. After interest was added to the verdict, plaintiff's judgment totaled $1,597,193.

Defendants appealed and we reversed and vacated the judgment based on the court's failure to provide an "exercise of judgment" charge. Granata v. Broderick, No. A-5272-10 (App. Div. July 8, 2013). On remand, the parties settled plaintiff's claims for $840,000.

After the settlement, OKS, Gourvitz, and Rotenberg asserted liens upon Acciavatti's legal fees. We previously detailed the intervenors' lien interests as follows:

> On October 27, 2010, following the $1.5 million jury verdict, but before our decision vacating that verdict, Acciavatti, LLC obtained a loan from OKS which Acciavatti guaranteed. On that date, a security agreement, a promissory note, and a guaranty of payment were all executed and signed by Acciavatti on behalf of Acciavatti, LLC. On December 2, 2010, OKS filed a UCC–1 financing statement, listing as debtors both Acciavatti, LLC and Acciavatti as guarantor of the loan. The statement identified the collateral as legal fees due to Acciavatti in the litigation, Granata v. Broderick, and noted that judgment was entered on August 23, 2010.
>
> Gourvitz is a lien creditor. On September 9, 2011, a consent judgment was entered in Gourvitz v.

Colfax, whereby Acciavatti assumed responsibility for a debt obligation to Gourvitz as a result of a March 5, 2010 summary judgment order entered against Acciavatti's client, Colfax, for collection of unpaid legal fees. On August 19, 2011, even though Acciavatti had not yet assumed responsibility for the debt, the trial judge entered an order declaring that Gourvitz had a lien on any attorney's fees awarded to Acciavatti in this case. On November 4, 2011, Gourvitz's judgment was recorded as a lien, and a writ of execution was filed on August 19, 2013.

Rotenberg is also a lien creditor. Acciavatti assumed a debt obligation to Rotenberg pursuant to a March 21, 2011 settlement agreement. On that same day, Acciavatti entered into a consent judgment with Rotenberg, which was recorded as a lien on January 24, 2013. A writ of execution was filed in January 2014.

[Granata, 446 N.J. Super at 473.]

At a January 9, 2015 hearing to address OKS's, Gourvitz's, and Rotenberg's lien interests, the court asked the intervenors' attorneys to confirm the amount of each lien. The judge specifically asked counsel to "tell me [if] this is right or this is wrong. I've got [OKS] in at one hundred and nineteen thousand," to which OKS's counsel replied, "[c]orrect." Gourvitz's counsel stated the amount owed to its client was $82,045.74 "as of [January 9, 2015]," and Rotenberg's counsel informed the court that his client was owed $133,652.42.

The court entered an order on January 15, 2015, which awarded Acciavatti $279,720 in attorney's fees to be paid out of the $840,000 settlement. On January 26, 2015, the court entered two orders, one of which denied Granata's motion for reconsideration. The other January 26, 2015 order established the distribution of Acciavatti's counsel fees as follows: 1) $40,000 to Granata's substituted attorneys pursuant to a previously executed agreement; 2) $9597.56 to the trustee holding the funds; 3) $83,284.97 to Gourvitz; 4) $133,652.42 to Rotenberg; and 5) the remaining $13,185.05 to OKS.

Granata appealed from the January 15, 2015 order awarding Acciavatti counsel fees and the January 26, 2015 order that denied reconsideration. OKS appealed from the January 26, 2015 order designating it last in the priority of Acciavatti's creditors.

We affirmed the two orders from which Granata appealed, but vacated the January 26, 2015 order to the extent it prioritized Gourvitz's and Rotenberg's lien interests ahead of OKS's, and remanded the matter for further proceedings. The Supreme Court granted Gourvitz's and Rotenberg's petition for certification, and subsequently affirmed our decision. Granata v. Broderick, 231 N.J. 135 (2017).

During the remanded proceedings, OKS filed a motion to intervene on December 15, 2017. The trial court denied OKS's motion on January 23, 2018, concluding that "a post judgment motion would suffice" and "[t]here is nothing to intervene into."[2]

OKS then filed a motion seeking an order "establishing the current lien" and "compelling the payment of monies disbursed" to Gourvitz and Rotenberg. Specifically, OKS sought $224,029.49, comprised of the asserted outstanding principal of $125,000, $89,719.45 in interest, $5383.17 in late fees, $956.92 for the costs related to the appeal, and $16,155 in attorney's fees. OKS acknowledged receipt of the $13,185.05 disbursed pursuant to the January 26, 2015 order, and subtracted that sum from the amount requested.

OKS maintained that it was entitled to attorney's fees, interest, and late fees under the October 27, 2010 promissory note between it and Acciavatti. The note provided that Acciavatti would be in default by, among other events, failing to make any required payment under the note within thirty days after

---

[2]  It is unclear from the record the basis for the trial court's ruling denying intervention as we had already concluded that "each of the creditors was entitled to intervene as of right . . . pursuant to Rule 4:33-1." See Granata, 446 N.J. Super. at 473. Accordingly, on remand, OKS and Gourvitz shall be deemed intervenors as of right.

A-3930-17T1

the payment became due. Further, the note stipulated that "upon the occurrence of an event of default hereunder, . . . [OKS] shall be entitled to recover all costs and expenses incurred by [OKS], including a reasonable allowance for attorneys' fees, to obtain or enforce payment of any sums owing hereunder or to enforce other obligations of [Acciavatti] to [OKS]." In addition, the note stated that "[n]o delay on the part of [OKS] in the exercise of any right, rights or options hereunder . . . and no failure to declare a default with respect to any one item of default shall constitute a waiver thereof or impair in any respect the rights of . . . [OKS] . . . to take any action provided herein."

Rotenberg opposed OKS's application on the basis that the UCC-1 financing statement that established OKS as a secured party lapsed and had not been renewed. In addition to joining Rotenberg's claim that OKS was no longer a secured party, Gourvitz alternatively relied on various estoppel-based theories in asserting that OKS's recovery should be limited to the $119,000 that counsel previously represented to the court, and it should not be permitted to recover late fees, interest, and counsel fees.

On March 23, 2018, the court heard oral arguments and issued an oral opinion in which the judge stated:

> So I understand your position. I am going to order [OKS] gets paid one nineteen, no interest, no attorney's fees. Gourvitz gets the same [$83,284.97], and the accounting firm [Rotenberg] gets [$37,435.03].

The court entered an order that same day that valued OKS's lien at $119,000, and ordered Rotenberg to pay OKS $105,814.95 "for the reasons set forth on the record" at the March 23, 2018 hearing.[3] This appeal followed.

## II.

On appeal, OKS argues that it was entitled to an award of interest, reasonable attorney's fees, and late fees and was not estopped from seeking those sums. OKS also claims the court's "naked conclusion" that it was "going to order [OKS] gets paid one nineteen, no interest, no attorney's fees," did not comply with Rule 1:7-4. Alternatively, OKS requests that we invoke original jurisdiction pursuant to Rule 2:10-5 and "find that OKS is entitled to payment of the $83,284.97 erroneously awarded to Gourvitz . . . with interest."

Gourvitz maintains that OKS is not entitled to interest, attorney's fees or late fees and, to the extent the October 27, 2010 promissory note authorized those costs, OKS waived its right to collect those sums due to its counsel's

---

[3] The $105,814.95 figure equals OKS's counsel's $119,000 representation minus the $13,185.05 that OKS received pursuant to the January 26, 2015 order.

A-3930-17T1

affirmative statement in which she sought only $119,000 and also because OKS delayed in seeking relief to Gourvitz's detriment.

As it did in the trial court, Gourvitz relies on various equitable doctrines in support of its waiver argument, including collateral, judicial, and equitable estoppel as well as the doctrines of invited error and laches. Finally, Gourvitz opposes OKS's request that we invoke original jurisdiction, and maintains that any necessary factual findings should be made by the trial court in accordance with Rule 1:7-4.

We conclude that the court's March 23, 2018 oral decision failed to comply with Rule 1:7-4. Further, we reject OKS's request that we invoke original jurisdiction.

Rule 1:7-4(a) provides that the court "shall . . . find the facts and state its conclusions of law thereon . . . on every motion decided by a written order that is appealable as of right . . . ." "Meaningful appellate review is inhibited unless the judge sets forth the reasons for his or her opinion. In the absence of reasons, we are left to conjecture as to what the judge may have had in mind." Salch v. Salch, 240 N.J. Super. 441, 443 (App. Div. 1990); see also Estate of Doerfler v. Fed. Ins. Co., 454 N.J. Super. 298, 301 (App. Div. 2018).

Although in some instances, a court may, by reference, rely on a litigant's reasons in reaching its decision, Vartenissian v. Food Haulers, Inc., 193 N.J. Super. 603 (App. Div. 1984), "[t]he court should, however, make the fact of such reliance explicit, and its failure to do so is tantamount to making no findings at all."  Pressler & Verniero, Current N.J. Court Rules, cmt. 1 on R. 1:7-4 (2019) (citing Allstate Ins. Co. v. Fisher, 408 N.J. Super. 289, 301 (App. Div. 2009)).

Here, the judge in his March 23, 2018 oral opinion summarily concluded that it would award OKS $119,000, "no interest, no attorney's fees" and failed to explain its reasoning in denying OKS's request for attorney's fees and interest expressly permitted by the October 27, 2010 promissory note.  Nor did the court analyze Gourvitz's various estoppel-based theories, or its claim that OKS, at the time of the November 23, 2018 hearing, no longer had a viable lien due to its failure to renew its UCC-1 filing.

We do not pass upon the merits of the parties' claims or defenses, but identify them solely to illustrate that by failing to provide any reasons for its decision, we, along with the litigants "are left to conjecture as to what the judge may have had in mind."  See Salch, 240 N.J. Super. at 443.  Because "our function as an appellate court is to review the decision of the trial court,

11

not to decide the motion tabula rasa[,]" Doerfler, 454 N.J. Super. at 302, the absence of appropriate factual findings and legal conclusions prevents this Court from meaningfully performing our function.

We also decline to exercise original jurisdiction. Rule 2:10-5 provides that "[t]he appellate court may exercise such original jurisdiction as is necessary to the complete determination of any matter on review." See also N.J. Const. art. VI, § 5, ¶ 3. "However, [this Court's] 'original factfinding authority must be exercised only with great frugality and in none but a clear case free of doubt.'" Fisher, 408 N.J. Super. at 301 (quoting Tomaino v. Burman, 364 N.J. Super. 224, 234–35 (App. Div. 2003)). "In determining whether to exercise original jurisdiction, an appellate court not only must weigh considerations of efficiency and the public interest that militate in favor of bringing a dispute to a conclusion, but also must evaluate whether the record is adequate to permit the court to conduct its review." Price v. Himeji, LLC, 214 N.J. 263, 295 (2013).

An appellate court may "exercise original jurisdiction to eliminate unnecessary further litigation," but it is "discourage[d] . . . if factfinding is involved." Id. at 294 (quoting State v. Santos, 210 N.J. 129, 142 (2012)). We do not "'weigh[] evidence anew and mak[e] independent factual findings;

rather, our function is to determine whether there is adequate evidence to support the judgment rendered' by the trial court." Fisher, 408 N.J. Super. at 302 (quoting Cannuscio v. Claridge Hotel & Casino, 319 N.J. Super. 342, 347 (App. Div. 1999)).

Based on the record before us, it is clear that additional factfinding is necessary rendering it inappropriate for us to exercise original jurisdiction. Among the unresolved issues are the reasonableness of OKS' attorney's fees, whether OKS's UCC-1 filing lapsed and the significance, if any, of that event. Further, we cannot conclude from the record if Gourvitz relied in good faith on OKS's former counsel's representation that OKS was owed $119,000.[4]

Reversed and remanded. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

---

[4] We do not intend this to be an exhaustive list of the unresolved factual issues.