**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NOS. A-4171-17T4
                         A-5522-17T4

MELISSA MORALES, n/k/a
MELISSA MATTEI,

     Plaintiff-Respondent,

v.

JULIO MORALES,

     Defendant-Appellant.

_____

Submitted July 23, 2019 – Decided August 15, 2019

Before Judges Ostrer and Geiger.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Sussex County, Docket No. FM-19-0181-11.

Julio Morales, appellant pro se.

Melissa Morales, respondent pro se.

PER CURIAM

Defendant Julio Morales filed two separate appeals from three Family Part orders entered following two plenary hearings. The first order required defendant to repay part of the college loans incurred by his daughter Meghan in monthly installments. The second order denied reconsideration. The third order required defendant to repay part of the college loans incurred by his daughter Jodie in monthly installments. We have consolidated the appeals for purposes of this opinion.[1] For the following reasons, we affirm.

I.

We write this opinion primarily for the parties, who are familiar with the history of this contentious litigation.[2] A brief summary will suffice here. The parties were married in June 1983 and divorced in January 2011. Three daughters were born of the marriage. At issue in these appeals is defendant's responsibility for the college expenses of their daughters Meghan, born in November 1989, and Jodie, born in February 1996.

The parties engaged in mediation during the pendency of the divorce action and reached certain agreements set forth in a September 2010

---

[1] The first appeal relates to the first and second orders; the second appeal relates to the third order.

[2] According to the trial court, the parties have filed twenty-seven post-judgment motions that resulted in approximately twenty orders.

A-4171-17T4

Memorandum of Understanding (MOU). The MOU stated its terms were not binding until incorporated into a property settlement agreement (PSA) prepared by the parties' attorneys and signed by the parties. Paragraph 17 of the MOU addressed college choice and expenses. It stated:

> A. The children shall apply for all available grants, scholarships and student loans. Thereafter, their College Bound Funds shall be applied. After applying said funding the remainder of the children's costs shall be shared in ratio to their incomes at the time after adding alimony to Melissa's income and deducting it from Julio's income, as per line 6 of the child support guidelines.
>
> B. A joint decision as to where Jodie shall attend school shall be made between the parties and Jodie taking into consideration her academic abilities and the parties['] financial circumstances at that time. Discussions regarding Jodie's college choice shall begin no later than the Fall semester of her junior year of high school.
>
> C. College expenses shall be defined as PSAT and SAT/ACT prep course and testing fees, application fees, tuition, room and board, room set-up costs, books and fees, computer costs, agreed upon allowance, and reasonable transportation costs, and agreed upon college search visits. The parties acknowledge that the majority of Meghan's college funds have been utilized and that any balance will be used to help her with room set up costs, etc., for this coming year.

The following month, the parties entered into a comprehensive PSA, the terms of which were incorporated by reference into the final judgment of divorce

3

(FJOD).  Article 10 of the PSA addressed responsibility for college tuition.

Relevant to this appeal, it provides:

> 10.1  Husband and wife shall equally contribute (50% Husband/50% Wife) to their children's college and/or graduate educational expenses including but not limited to fees for PSAT and SAT/ACT prep courses or tests, college application fees, tuition, room and board (whether on or off campus), room set-up costs, books and fees, computer costs, agreed upon allowance, and reasonable transportation costs, and agreed upon college search visits and expenses associated with the selection process, mandatory fees, and incidental expenses, in accordance with their income and assets and ability to pay at the time the cost is to be incurred, after all scholarship, grants, loans, work-study, etc. have been exhausted by the child.
>
> . . . .
>
> 10.4  Neither party shall commit the other party to any post-secondary educational costs.  The Husband and Wife shall consult with each other and the child regarding choice of school and cost associated therewith prior to any final decision regarding same.  The Husband and Wife agree to take into consideration the child's desires regarding a choice of post-secondary education.
>
> 10.5  The children, namely Meghan and Jodie shall apply for all available grants, scholarships and student loans for their college education.

Article 17A was added in an addendum to the PSA.  It provided:

> The children shall apply for all available grants, scholarships and student loans.  Thereafter, their

4

College Bound Funds shall be applied. After applying said funding the remainder of the children's costs shall be shared in ratio to their incomes at the time after adding alimony to Melissa's income and deducting it from Julio's income, as per line 6 of the child support guidelines.

## A. The First Appeal

In March 2015, plaintiff moved to enforce Article 10 of the PSA, seeking contribution toward the cost of Meghan's college expenses. Defendant opposed the motion, claiming plaintiff failed to keep him informed of Meghan's education. Defendant also claimed the proceeds of Meghan's loans were used to purchase unnecessary items that were not directly related to college or fiscally responsible. In addition, defendant claimed that, pursuant to Article 10 of the PSA, he had no obligation to pay for any portion of Meghan's college expenses that were paid from the loan proceeds. In essence, he contended he was only required to contribute to any remaining college expenses after applying scholarship, grant, and loan funds, and if those funds satisfied tuition expenses, no contribution was necessary. Defendant contended all of Meghan's college expenses were financed entirely by loans. Therefore, he owed no contribution toward those expenses.

The trial court ordered the parties to engage in certain discovery, including plaintiff furnishing a statement of account for Meghan's college expenses. The

court noted the conflicting terms of paragraph 10.1 of the PSA, which stated the parties "shall equally contribute (50% Husband/50% Wife) to their children's college and/or graduate educational expenses" then later in the same paragraph stated they would contribute to those expenses "in accordance with their income and assets and ability to pay at the time the cost is to be incurred, after all scholarship, grants, loans, work-study, etc. have been exhausted by the child." The court rejected defendant's assertion that he had no obligation to contribute to college expenses because there was no balance due after applying the loan proceeds, stating:

> If this were the case no parent would ever have to contribute as loans would almost always be taken out to cover the entire cost of the education. The language of the PSA is unclear, as is the case with many PSAs, regarding the child's obligations after loans, grants, etc. The [c]ourt interprets this portion of the PSA to mean that the child must obtain any and all scholarships and grants available to the child and then apply for the maximum amount of Stafford loans which may total as much as $33,000 for four (4) years. The parties' responsibility then is the amount in excess of the Stafford loans still needing to be covered.

A subsequent order established a discovery schedule. The court also engaged in a preliminary analysis of Meghan's tuition and loans for 2011 and 2012 and the parties' relative income. The court concluded defendant's share was 46.5 percent, or $10,169.77. The court ordered defendant to remit payments

6

of $500 per month for his share of Meghan's college expenses, commencing October 16, 2016, without prejudice to the results of the plenary hearing to be conducted.

After settlement efforts failed, the court conducted a one-day plenary hearing on December 4, 2017. Plaintiff, defendant, and Meghan testified. Both parties appeared pro se. Plaintiff's exhibits, P-1 through P-355, and defendant's exhibits, D-1 through D-15, were moved into evidence. The court subsequently issued an order and written statement of reasons on December 22, 2017.

The trial court made the following findings. At the time of the parties' divorce, Meghan was about to commence her junior year at East Stroudsburg University (ESU). She graduated from ESU in four-and-one-half years. Meghan received a cheerleading scholarship of a few hundred dollars and no grants. Her college expenses were financed entirely by government and private loans. Meghan's maternal grandmother co-signed for the loans; she never asked defendant to co-sign the loans. The private loans were consolidated by Lendkey. The principal balances were $119,551.48 to Lendkey and $33,988.53 to FedLoan, for a total loan balance of $153,540.01. Meghan admitted on cross-examination that she did not comprehend the actual costs she was incurring and their impact on her financial future until repayment began.

A-4171-17T4

Defendant participated in the college selection process by taking Meghan on several college visits. He said he expressed the opinion she should attend Montclair State University because she could live at home and reduce her college expenses. Meghan testified she decided to attend ESU because she wanted a true college experience living away from home.

The trial court found defendant produced no evidence that he was not consulted or aware of Meghan's college selection, or that he objected to Meghan attending ESU. The court found defendant was aware of her college selection because Meghan was living in the marital home with defendant when she selected ESU, and her attending ESU was referenced in the parties' PSA. The court noted the PSA referred to payment of "expenses relating to room and board." The court found defendant was aware of the cost of attending ESU.

The court noted the September 16, 2016 order calculated the parties' income percentage as 46.5 percent for defendant and 53.5 percent for plaintiff, accounting for the alimony paid by defendant to plaintiff. The court assigned those percentages to the college expenses to be reimbursed by each party.[3]

---

[3] The 2016 income of the parties after alimony was 45.9 percent for defendant and 54.1 percent for plaintiff. The trial court found the difference was not material.

A-4171-17T4

Based on its analysis of the case law imposing a duty on parents to provide financial support to their children attending college, and the May 8, 2015 order, the court rejected defendant's assertion he was not obligated to contribute to Meghan's college expenses. The court concluded the evidence did not suggest defendant and Meghan were estranged while Meghan was attending college. On the contrary, the court found defendant assisted Meghan in certain physical moves to different residences at college. The judge noted "defendant testified only he has not spoken with Meghan since her graduation from college in May 2014."

The court reiterated its prior finding "that the parents' financial obligations were triggered after application of scholarships, grants and the federal (Stafford) loans." The court found this rationale consistent with the case law that "financially capable parents should contribute to the higher education of children who are qualified students," quoting Newburgh v. Arrigo, 88 N.J. 529, 544 (1982). The court also concluded it was not in "a child's best interest to be saddled with insurmountable student loans when parents are capable of paying a portion of the child's tuition," citing Monmouth Cty. Div. of Soc. Servs. v. G.D.M., 308 N.J. Super. 83, 88 (Ch. Div. 1997).

The court resolved the conflicting language in paragraph 10.1 of the PSA by referring to Article 17A of the addendum. The court concluded:

> the parties did not intend to share costs [fifty-fifty], otherwise they would not have included two independent references to dividing their shares on the basis of their percentage incomes. Notwithstanding, based upon the parties' actual incomes between the date of divorce and now, there is very little difference between a [fifty-fifty] split and the split adopted by this court—[d]efendant (46.5%) and [p]laintiff (53.5%).

The court further found the parties were able to contribute to Meghan's college expenses based on their case information statements.

The trial court then noted that, if the parties previously agreed the children would be attending college and how those college expenses should be divided, the court need not apply the twelve Newburgh factors and "should enforce the agreement as written." The court found Moss v. Nedas, 289 N.J. Super. 352 (App. Div. 1996) inapposite to the facts in this case.

The court determined Meghan was solely responsible for her federal loans totaling $33,988.53. With respect to the private loans consolidated by Lendkey, the court found "it inequitable to hold the parties' responsible for more than four years of post-secondary schooling," and reduced the amount potentially allocated to the parties to $106,267. From that reduced amount, the court found it reasonable to allocate fifty percent to Meghan based on six factors described

10

in its Statement of Reasons, twenty-five percent to plaintiff, and twenty-five percent to defendant. Thus each party was held responsible for $26,566.75 of the college loans. Defendant was credited for his prior payments totaling $7500 made pursuant to the September 2016 order. He also received a credit of $3921.60 for child support overpayments following the youngest daughter's emancipation. This yielded a net balance of $15,145.15 to be repaid at the rate of $500 per month until paid in full.

Defendant moved for reconsideration. The trial court denied the motion for the following reasons:

> Defendant claims that he should be entitled to a reconsideration of his college contribution based upon Plaintiff's failure to provide proof of college expenses and based on Meghan's college expenses being "financed entirely by loans." Plaintiff provided the court with pre-marked exhibits prior to the plenary, which exhibits provided ample evidence of . . . Meghan's college expenses. Moreover, the court also previously addressed Defendant's argument that he should not be required to contribute to Meghan's college expenses, because the expenses were entirely financed by loans. As set forth in the court's prior order dated December 22, 2017, the court made all necessary findings of fact and conclusions of law in terms of the parties' college contributions, and Defendant raises no issues or arguments that were not previously made at the plenary hearing.

The trial court noted defendant did not "point out any prior evidence that was overlooked or demonstrate how the [c]ourt acted in an arbitrary or capricious manner." The court further noted defendant did not "cite any law or legal precedent that the court overlooked in rendering its decision." The first appeal followed.

## B. The Second Appeal

Jodie attended the Culinary Institute of America (CIA) from February 2015 through March 2016, graduating with an Associate's degree. CIA students are required to complete an externship in a restaurant. Jodie completed a four-month externship at a restaurant in South Carolina in January 2016.

In March 2015, plaintiff moved to enforce Article 10.1 of the PSA by compelling defendant to contribute to the cost of Jodie's CIA tuition and related college expenses, including "room set-up costs." Defendant cross-moved to enforce litigant's rights, alleging plaintiff failed to provide him with up-to-date information regarding Jodie's tuition and expenses. He also opposed responsibility for Jodie's room set-up costs, claiming many of the purported college expenses were duplicate purchases of items and were included within defendant's child support obligation.

In its May 8, 2015 order, the trial court directed plaintiff to "keep [d]efendant apprised of all issues related [to] Jodie's education, including costs, and contributions from the children, etc." Following submission of a supplemental certification by plaintiff, the trial court entered a September 30, 2015 order directing defendant to reimburse certain college expenses incurred by Jodie. The court noted, however, that certain expenses related to recommendations by the school of items to bring to campus rather than necessities. The court concluded "[p]laintiff cannot use these recommendations as a 'blank check' to purchase anything she sees fit or the children ask for and require and/or expect reimbursement from [d]efendant," and limited reimbursement for room set-up to $199.30. The order noted several issues regarding college expenses but did not determine defendant's obligation to reimburse plaintiff for Jodie's CIA tuition.

In May 2017, plaintiff again moved for contribution to Jodie's CIA tuition. The court ordered a plenary hearing and directed the parties to engage in related discovery. The one-day plenary hearing was conducted on June 11, 2018. Both parties appeared without counsel. Jodie and both parties testified at the hearing.

Defendant raised the same arguments in opposition to responsibility to contribute to Jodie's college tuition that he asserted in opposition to contribution

13

for Meghan's college tuition. He contended plaintiff failed to consult with him on Jodie's selection of CIA and related costs. He argued Jodie was obligated to apply for scholarships, grants, and loans, and the parties were only obligated to contribute to the extent tuition was not covered by scholarships, grants, and loans. Because Jodie was able to borrow the entire amount of tuition, there was no remaining balance requiring reimbursement. Defendant also asserted he did not receive all of the financial documentation regarding Jodie's tuition and related expenses.

Plaintiff and Jodie testified defendant was aware of Jodie's interest in attending culinary school at CIA, the application process, and that working in the restaurant industry for one-and-one-half years was an application prerequisite. Jodie testified she worked at Panera Bread to qualify for admission.

Plaintiff testified defendant was aware of the cost to attend CIA. She acknowledged she did not consult with defendant regarding Jodie's loans because defendant had recently filed a bankruptcy petition. The trial court inferred defendant had no credit to assist Jodie in obtaining financing at the time she applied to CIA. Jodie testified defendant did not provide any input or advice during the application process, and did not suggest any alternate schools. Jodie

14

conceded she did not consider the cost of attending CIA because "her heart was set on CIA" and she felt there were no other options. She testified she would have attended CIA even if defendant had suggested other schools.

Plaintiff testified all remaining 529 plan funds were exhausted to pay Jodie's tuition. Jodie financed her college expenses through an $11,876 Stafford loan and fifteen-year private loans in the amounts of $26,000 and $24,000, borrowed at the rates of 8.24 percent and 7.74 percent, respectively. The first private loan was cosigned by Meghan; the second by her maternal grandmother. With interest, the repayment of the two private loans would total $95,166. Therefore, Jodie's aggregate loan obligation totaled $107,042 and her monthly payment obligation is $560.75. Plaintiff testified she provided defendant with the loan documentation.

Plaintiff testified Jodie lives with her and pays her $100 per week for rent. Plaintiff returns those funds to Jodie to apply toward her contribution to Jodie's college expenses. Jodie is employed by a restaurant and earns $1000 biweekly. As of the date of the plenary hearing, defendant had contributed no monies toward Jodie's CIA tuition.

Defendant testified he was not consulted regarding Jodie's decision to attend CIA and was not advised of the tuition at CIA. He contended his advice

to apply to other schools was ignored. Defendant claimed Jodie's decision to borrow privately at such high interest rates was irresponsible and he should not be responsible for the resulting high loan balances. He also argued he should not be required to contribute to Jodie's college expenses because plaintiff makes no actual contributions.

The trial court found plaintiff and Jodie were credible, while defendant was not. The court found the evidence, including extensive email communications, refuted his contentions. The court noted defendant drove Jodie to work at Panera Bread during high school. The documents evidenced "[d]efendant's awareness of Jodie's interest in CIA long before the application process commenced." Plaintiff sought contribution from defendant for Jodie to participate in a program at CIA in 2013, while Jodie was still in high school. The evidence demonstrated plaintiff provided defendant with Jodie's enrollment information seven months prior to entering CIA and that he was aware of the tuition at CIA. With regard to selecting CIA, defendant could not recall the names of any other schools or programs he had suggested to Jodie. As to Jodie's room set-up costs, defendant told plaintiff he would drop off payments after he got paid.

16

The trial court rejected defendant's contention that he had no obligation to contribute to Jodie's CIA tuition, based on "[p]laintiff's credible testimony that [d]efendant was apprised of Jodie's plans and the details regarding CIA, which testimony was corroborated by [p]laintiff's exhibits documenting the consistent communications between the parties regarding CIA and the associated costs." The court found defendant did not object to Jodie attending CIA at any stage of the application process. It concluded defendant "had an affirmative responsibility to assert his objection or lack of consent," and could not "sit idly by for several years and subsequently claim he has no financial obligation because he was not consulted or did not provide his consent."

The trial court also rejected defendant's contention he was not obligated to contribute to Jodie's college tuition because she was able to borrow the full cost of tuition for the same reasons it expressed when defendant made the same argument as to Meghan.

Finally, the trial court rejected defendant's argument he should bear no responsibility for Jodie's tuition because he did not receive all of the financial information regarding CIA's tuition and costs. The court found "[p]laintiff was communicative and attempted to provide [d]efendant with full and complete information regarding Jodie's CIA tuition," as "evidenced by the plethora of

17

communications from [p]laintiff to [d]efendant both prior to and following Jodie's matriculation at CIA." As noted by the court, "[m]ost often, [p]laintiff's communications were met with silence and there were no communications from [d]efendant wherein he opposed CIA or affirmatively sought information from [p]laintiff regarding the CIA tuition or related expenses."

As it had when analyzing Meghan's college expenses, the trial court noted that since the parties had previously agreed the children would attend college and how those college expenses should be divided, it need not apply the twelve Newburgh factors and "should enforce the agreement as written." The court again found Moss v. Nedas, 289 N.J. Super. 352 (App. Div. 1996) inapplicable.

The court also engaged in the same analysis of the language of the PSA and the parties' similar income levels since the date of divorce as it had when considering Meghan's college expenses. Finding the parties' income levels were within a few percentage points of being equal after considering the income paid by defendant to plaintiff, the court found the parties were able to contribute to Jodie's college tuition.

The court rejected plaintiff's demand that defendant contribute one half of the total amount borrowed or $55,187.07, which would leave Jodie with no financial obligation for her CIA tuition if plaintiff contributed an equal amount.

18

Adopting the same reasoning it employed in determining responsibility for Meghan's tuition, the court held Jodie solely responsible for her Stafford loans of $11,876, plus all related interest. The court held Jodie responsible for one half of the private loans. The court held each party responsible for half of the remaining $25,000 principal balance of the private loans, plus interest at a reasonable rate and term, ten-year amortization at four percent interest, yielding a total repayment by the parties of $30,374 or $253.11 per month for ten years. Accordingly, defendant was held responsible for 45.9 percent of that amount, or $13,941.67, payable at the rate of $116.18 per month for 120 months. The second appeal followed.

## II.

In the first appeal, defendant argues:

> THE TRIAL COURT ERRED IN ORDERING THE HUSBAND TO PAY $26,566.75 TOWARDS MEGHAN'S LOANS SUPPOSEDLY USED FOR COLLEGE EXPENSES.
>
> > A. The Wife's Motion Was Untimely And Barred By Laches.
> >
> > B. The Wife's Motion Was Barred By Res Judicata.
> >
> > C. The Wife Did Not Provide A CIS And Other Financial Information Either Prior To Nor During The Plenary Hearing.

19

D. The Trial Court Failed To Give Plain And Ordinary Meaning To The Parties' Contract – The PSA And MOU.

E. The Trial Court Decision Does Not Comport With Newburg[h] v. Arrigo.

We are unpersuaded by these arguments and affirm the trial court's college loan repayment and denial of reconsideration rulings substantially for the reasons expressed by the trial court in its comprehensive fifteen-page Statement of Reasons and subsequent order denying reconsideration. We add the following comments.

Our scope of review of Family Part orders is limited. Cesare v. Cesare, 154 N.J. 394, 411 (1998). We owe substantial deference to Family Part judges' findings of fact because of their special expertise in family matters, id. at 413, especially where the evidence is largely testimonial and rests on the judge's credibility findings, Gnall v. Gnall, 222 N.J. 414, 428 (2015). We will not "disturb the 'factual findings and legal conclusions of the trial judge unless [we are] convinced that they are so manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence as to offend the interests of justice.'" Cesare, 154 N.J. at 412 (quoting Rova Farms Resort, Inc. v. Inv'rs Ins. Co., 65 N.J. 474, 484 (1974)).

20

The trial court's credibility and factual findings are amply supported by substantial credible evidence in the record. The court properly applied the facts to the relevant principles of law governing responsibility for Meghan's college expenses, specifically taking into account the language of the PSA, the manner in which the loans were incurred, the parties' relative income, and defendant's ability to pay. We discern no abuse of discretion and affirm the first order.

Defendant also appeals from the denial of his motion for reconsideration. Defendant did not brief this issue. An issue not briefed on appeal is deemed waived. See Woodlands Cmty. Ass'n v. Mitchell, 450 N.J. Super. 310, 318-19 (App. Div. 2017) ("An issue not briefed on appeal is deemed waived." (quoting Sklodowsky v. Lushis, 417 N.J. Super. 648, 657 (App. Div. 2011))). Even if we were to consider the issue, we discern no error by the trial court.

A trial court's order on a motion for reconsideration will not be set aside unless shown to be an abuse of discretion. Granata v. Broderick, 446 N.J. Super. 449, 468 (App. Div. 2016), aff'd o.b., 231 N.J. 135 (2017). A motion for reconsideration of an order must "state with specificity the basis on which it is made, including a statement of the matters or controlling decisions which counsel believes the court has overlooked or as to which it has erred." R. 4:49-2. In addition, "[r]econsideration cannot be used to expand the record and

A-4171-17T4

reargue a motion. Reconsideration is only to point out 'the matters or controlling decisions which counsel believes the court has overlooked or as to which it has erred.'" Capital Fin. Co. of Delaware Valley, Inc. v. Asterbadi, 398 N.J. Super. 299, 310 (App. Div. 2008) (quoting R. 4:49-2). Reconsideration should only be granted in those cases in which the court based its decision "upon a palpably incorrect or irrational basis," or "did not consider, or failed to appreciate the significance of probative, competent evidence." Granata, 446 N.J. Super. at 468 (quoting Fusco v. Bd. of Educ., 349 N.J. Super. 455, 468 (App. Div. 2002)).

The trial court found defendant did not show any evidence that was overlooked, cite any legal principles that were ignored, or demonstrate the court acted in an arbitrary or capricious manner. We agree. The trial court properly denied reconsideration. We discern no abuse of discretion and affirm the second order.

## III.

In the second appeal, defendant argues:

> THE TRIAL COURT . . . ERRED IN ORDERING THE HUSBAND TO PAY $13,931.67 TOWARDS JODIE'S LOANS SUPPOSEDLY USED FOR COLLEGE EXPENSES.
>
> > A. The Wife's Motion Was Untimely And Barred By Laches And Res Judicata.

B. The Wife Did Not Provide A CIS And Other Financial Information Either Prior To Nor During The Plenary Hearing.

C. The Trial Court Failed To Give Plain And Ordinary Meaning To The Parties' Contract – The PSA And MOU.

D. The Trial Court Decision Does Not Comport With Newburg[h] v. Arrigo.

We are likewise unpersuaded by these arguments and affirm the trial court's college loan repayment ruling substantially for the reasons expressed by the trial court in its comprehensive twenty-one-page Statement of Reasons. We add the following comments.

The trial court's credibility and factual findings are amply supported by substantial credible evidence in the record. The court properly applied the facts to the relevant principles of law governing responsibility for Jodie's college expenses, specifically taking into account the language of the PSA, the manner in which the loans were incurred, the parties' relative income, and defendant's ability to pay. We discern no abuse of discretion and affirm the third order.

IV.

Defendant's remaining arguments are without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

23

A-4171-17T4